RODERER, AUDITOR, APPELLEE, *v.* BOARD OF TRUSTEES OF MIAMI TOWNSHIP, APPELLEE; CITY OF MORAINE ET AL., APPELLANTS.

(No. CA 8289—Decided December 15, 1983.)

*Mr. Lee C. Falke,* prosecuting attorney, and *Mr. Michael Russell,* for appellee.

*Mr. Irvin G. Bieser,* for appellee Board of Trustees of Miami Township.

*Mr. Philip B. Herron,* for appellant city of Moraine.

*Mr. William D. Forbes,* for appellants city of Miamisburg and city of West Carrollton.

ZIEGEL, J. During the period from October 7, 1980 to July 9, 1981, the dimensions of Miami Township, Montgomery County, Ohio were reduced by annexations by neighboring cities as follows:

a. October 7, 1980, city of Miamisburg, 342.304 acres;

b. October 7, 1980, city of Miamisburg, 276.855 acres;

c. June 23, 1981, city of West Carrollton, 854.617 acres;

d. August 14, 1980, city of Moraine, 80.8 acres;

e. July 9, 1981, city of Moraine, 9.7 acres.

Plaintiff, the Auditor of Montgomery County, Ohio, recognizing that he might be charged by law, under R.C.

709.19(H), to issue warrants to compensate Miami Township for loss of revenues occasioned by its loss of territory under the general provisions of R.C. 709.19, being unable to establish an agreement between the township and the cities concerned, and being doubtful as to the construction to be placed upon R.C. 709.19, brought this action for a declaratory judgment. The township and each of the above-named cities were named as parties-defendant. After an extensive hearing, the trial court reached the following conclusions of law pertinent to this appeal:

"1. For purposes of R.C. 709.19, 'township' does not include a municipal corporation, even though the municipal corporation is attached;

"2. For purposes of R.C. 709.19, 'taxes' includes township service district taxes;

"3. R.C. 709.19 does not offend the Constitution of the United States or the State of Ohio."

An appeal from this decision was duly perfected by the city of Moraine, and the cities of Miamisburg and West Carrollton. Moraine assigns error as follows:

"1. The trial court committed error prejudicial to said defendant-appellant in holding that Section 709.19 of the Revised Code does not constitute an impermissible intrusion upon the city of Moraine's powers of local self government in violation of Sections 3 and 7 of Article XVIII of the Ohio Constitution.

"2. The trial court committed error prejudicial to said defendant-appellant in holding that the language in Section 709.19 of the Revised Code is not so vague and uncertain in its meaning as to render the statute null and void."

Miamisburg and West Carrollton assert the following assignments of error:

"1. The trial court erred in holding that the term 'township' in Section 709.19 of the Ohio Revised Code included only the unincorporated areas of the township.

"2. The trial court erred in holding that the phrase 'taxes charged by a township' included all taxes charged by police districts, fire districts, and waste disposal districts created within that township."

Those parts of R.C. 709.19 pertinent to this appeal are:

"(A) As used in this section:

"(1) 'Annexation period' means a period of one, two, or three consecutive twelve-month periods, whichever is less, during which one or more municipal corporations annex territory of a township that includes at least fifteen per cent but less than one hundred per cent of the total taxable value of the real, public utility, and tangible personal property subject to taxation in that township * * *

"* * *

"(3) 'Taxes' means the real and public utility property taxes charged by a township in the base year * * *

"(4) 'Township taxes in the annexed territory' means the taxes against the real, public utility, and tangible personal property subject to taxation in the base year in territory annexed from the township to a municipal corporation during an annexation period * * *."

With the exception of Moraine's first assignment of error, each of the aforementioned assignments of error deals with a construction of the language of R.C. 709.19. In its first assignment of error, Moraine contends that since R.C. 709.19 does not apply until after the annexation by a municipality of township territory takes place, it constitutes an impermissible intrusion on the home rule powers granted to municipalities by Sections 3 and 7, Article XVIII of the Ohio Constitution, in that during the waiting period of up to thirty-six months set forth in R.C. 709.19 (A)(1), the municipality is hampered in

carrying out normal planning functions incident to its responsibility to provide funding for local government operations. Moraine concedes that annexation and detachment procedures are matters of "state-wide" concern, *Beachwood* v. *Board of Elections* (1958), 167 Ohio St. 369 [5 O.O.2d 6], but argues that since the provisions of R.C. 709.19 do not apply until after an annexation takes place, the legislature exceeded the limitations placed upon it by the Home Rule Amendments. We disagree.

Since the legislature has authority to prescribe the mechanics of annexation, we hold that it also has the authority to delineate in advance of annexation those burdens which may be attendant upon such annexation. In this case, R.C. 709.19 was effective before any of the governing bodies of any of the municipalities concerned enacted annexation ordinances. Each of these bodies knew at the time that if the threshold of fifteen percent "of the total taxable value of the real, public utility, and tangible personal property subject to taxation" in Miami Township was reached, either by its own annexation or by the sum total of other annexations by other municipalities from the township, a tax sharing with the township would be required. The enactment of the annexation ordinances was voluntary, and was accomplished with full knowledge that any tax monies received from the annexed territory might be subject to a future sharing requirement with the township from which the territory was being annexed. Moraine concedes that the legislature could have constitutionally enacted a statute which made a redistribution of tax revenues a condition precedent to annexation. We see no distinction in making such redistribution a condition subsequent if the fifteen percent threshold is reached. If any of these municipalities was unwilling to assume the burden of the known potential condition subsequent, the same could have

been avoided by failing to enact the annexation ordinance.

Moraine's first assignment of error is not well-taken.

The remaining assignments of error deal with claimed errors of the trial court in construing R.C. 709.19. It is well-settled that a court's duty in construing an act of the legislature is to determine legislative intent, and this is done primarily from the language in which the enactment is couched. 50 Ohio Jurisprudence 2d (1961) 141, Statutes, Section 170. Where that language is ambiguous, however, the court, in determining construction, may consider other matters, among which are, as set forth in R.C. 1.49:

"(A) The object sought to be attained;

"(B) The circumstances under which the statute was enacted;

"(C) The legislative history;

"(D) The common law or former statutory provisions, including laws upon the same or similar subjects;

"(E) The consequences of a particular construction;

"(F) The administrative construction of the statute.

The trial court determined that the statute in question was indeed ambiguous. During the course of the hearing, certain testimony was offered and received to enable the court to resolve the ambiguity as set forth in R.C. 1.49. No error is assigned as to the admission or use of any of this testimony, and reference is made to it both in the trial court's opinion and in the briefs of counsel. On the appellate level, however, we consider much, if not all, of this testimony to be incompetent or of little probative value. It must be remembered that "the law as it is passed is the will of the majority of both houses; * * * and it is impossible to determine with certainty what construction was put upon an act by the members of the legislative body that passed it by resorting to the

speeches of individual members thereof, since those who did not speak may not have agreed with those who did, and those who spoke may have differed from one another." 50 Ohio Jurisprudence 2d (1961) 259, Statutes, Section 274. While there is some authority for considering the testimony of sponsors of legislation, 73 American Jurisprudence 2d (1974) 380, Statutes, Section 177, we are unaware of any case law which makes the testimony of persons who testified before a legislative committee or who consulted with sponsors of legislation probative. Accordingly, in passing upon the assignments of error, use of such questionable testimony, even though it may have been received in the trial court, will generally be ignored.

The problem involved in the Miamisburg-West Carrollton first assignment of error arises out of the fact that, different from the other two cities, Miamisburg has never availed itself of the privilege conferred by R.C. 503.07 to petition the Montgomery County Board of County Commissioners for a change of Miami Township boundary lines in order to make them identical with its own boundaries. The result is that Miamisburg is still a part of Miami Township. Accordingly, appellant cities contend that in order to determine whether the fifteen percent threshold of total taxable value set forth in R.C. 709.19(A)(1) has been reached, the taxable value of the real, public utility, and tangible personal property subject to taxation in the city of Miamisburg must be taken into consideration. Appellee Miami Township, however, argues that the word "township" as used in the statute only refers to unincorporated territory of the township, as determined by the trial court.

Statutorily, the word "township" has a clear meaning. A township is a creature of the board of county commissioners. R.C. 503.03. Upon the creation of a township, or its change or altera-

tion, "[t]he board shall cause the boundaries of such township * * * to be recorded in a book to be kept for that purpose * * *." R.C. 503.04. When the petition of a municipal corporation for a change of township lines is granted, the board of county commissioners makes the appropriate boundary changes. R.C. 503.07. Thus, the township includes municipalities within its geographic boundaries, unless resort is had by these municipalities to R.C. 503.07.

The "taxing authority" of a township, per R.C. 5705.01(C), rests in its board of township trustees. And that taxing authority is co-extensive with its boundaries. Within the limits of its authority, the board of township trustees has authority to levy taxes on property within its boundaries, including the levy of taxes upon property within the corporate limits of a municipality such as Miamisburg that is geographically a part of the township. Indeed, at hearing, the President of the Board of Township Trustees of Miami Township acknowledged the receipt of tax income derived from property physically located within the corporate limits of the city of Miamisburg. That income will continue to the same extent as to annexed township territory after annexation. The potential loss occasioned by Miami Township to annexations by Miamisburg is, therefore, proportionately less than any loss which might be occasioned by Moraine or West Carrollton annexations of township territory.

What became R.C. 709.19 proceeded through the Ohio General Assembly as Am. Sub. S. B. 138. The purpose of the legislation is set forth in the preamble to this Bill:

"To enact section 709.19 of the Revised Code to require an annexing municipality to make payments under certain conditions to the township affected by the annexation. * * *"

The "affect" upon Miami Township is clearly different from a Miamisburg

annexation and a Moraine or West Carrollton annexation. The property in the territory annexed by Miamisburg is still subject to township taxation. On the other hand, in the absence of the corrective measures provided by R.C. 709.19, the property in territory annexed by Moraine or West Carrollton, after annexation, would no longer provide any tax income to Miami Township. There is, therefore, contrary to appellee's argument, a recognizable distinction from the affect an annexation by Moraine and West Carrollton would have on Miami Township vis-a-vis an annexation by Miamisburg.

Appellee contends that the phrase in R.C. 709.19(A)(1), "annex territory of a township that includes at least fifteen per cent but less than one hundred per cent," requires a construction of the word "township" to mean only unincorporated territory since a municipality which is a part of the township could not conceivably annex its own territory. It could, however, annex "less than one hundred per cent," and "at least fifteen per cent," quantities sufficient to make the statute operative.

It is further argued that if "township" is construed to include an attached municipality rather than just the unincorporated territory of the township, this would make it possible for the attached municipality to annex more land than a detached municipality before the fifteen percent threshold was reached. Be that as it may, we perceive this to be a problem for the legislature, not for the courts, where there is a duty to construe a statute as it is, not as it ought to be.

All parties, and the trial court, agree that in its enactment of this statute, the legislature did not consider the attached/detached phenomenon, a conclusion they reached as a result of the testimony of the sponsors of the legislation. We reach the same conclusion on the basis of the language of the statute. It is not for the courts to add material to legislation which the General Assembly did not consider.

Accordingly, we hold that the word "township" in R.C. 709.19 is not ambiguous; that township is a territorial concept as set forth in R.C. 503.04 and 503.07; and that the phrase "total taxable value of the real, public utility, and tangible personal property subject to taxation in that township" in R.C. 709.19(A)(1) includes that property located within the corporate limits of Miamisburg, an attached city.

The first assignment of error of Miamisburg and West Carrollton is therefore held to be well-taken.

The Miamisburg-West Carrollton second assignment of error involves the construction of R.C. 709.19(A)(3) and (4), and requires that the meaning of " 'taxes' * * * charged by a township * * *" and " 'township taxes in the annexed territory' " be determined. These appellants contend that these phrases limit those taxes to those levied by the township itself, and excludes any such taxes as might be levied by township service districts. Appellee urges, and the trial court so held, that taxes "charged by a township" refers not only to those taxes emanating from the township but also to those taxes derived from its service districts.

Various sections in R.C. Chapter 505 recognize a township's duty to provide certain essential services to its citizens. The board of township trustees may provide these services either through its own efforts or through the creation of service districts. These service districts have their own taxing powers, separate and apart from that of the township itself. Evidence introduced at the hearing established that the township board of Miami Township had indeed created within its territorial limits certain service districts and that a certain tax rate is applied solely to the operation of these service districts, all of

which testimony is pertinent to this assignment of error.

There was also testimony concerning the specifics of the Miami Township service districts, the extent thereof (unincorporated areas), and the manner in which the board of township trustees administered the various service districts. (The statutes authorizing the creation of service districts each makes the board of trustees of the township the board of trustees of the service district.) We consider this evidence immaterial to our review. The assignment of error does not challenge the manner in which the trial court applied the statute to Miami Township, but rather complains about the construction of the statute generally. R.C. 709.19 was not enacted solely to remedy a situation created by municipal annexations of Miami Township, Montgomery County, Ohio territory, but rather was enacted, as is constitutionally required, for general application throughout the state.

Again, we observe that there is nothing in R.C. 709.19 which in any way refers to service districts; and it is conceivable that, similar to the situation referred to *supra* in our consideration of R.C. 709.19(A)(1), the legislature was unaware of any township/service district problem when it enacted R.C. 709.19 (A)(3) and (4). As noted in the preamble to Am. Sub. S. B. 138, however, the legislature was aware of the effect annexations of township territory by municipal corporations would have on the subject township, and on its ability to provide essential services to its citizens.

The legislature also recognized the need to provide these services when it enacted the various sections of R.C. Chapter 505, wherein the means of financing and administering them were set forth. Whether the board of township trustees elected to provide these services itself or to set up service districts, that board still had the duty to see that the service needs of its citizens were met. In either case, the same board made necessary decisions, the principal difference being in the methods of funding and account. It is inconceivable that the legislature by using the language in R.C. 709.19(A)(3), "charged by a township," intended to deprive the township which had elected to set up service districts of funds for services to its citizens which otherwise would have been available to it had it determined to provide those services itself rather than through service districts.

Accordingly, we hold that the trial court was correct in finding that "for purposes of R.C. 709.19, 'taxes' includes township service district taxes." The Miamisburg-West Carrollton second assignment of error is therefore overruled.

Lastly, we comment briefly ' on Moraine's second assignment of error. Having been able to reach conclusions relative to the meaning of "township" and "taxes charged by a township" as used in R.C. 709.19, we cannot say that these terms are so vague and uncertain as to render the statute null and void.

Having determined that the Miamisburg-West Carrollton first assignment of error is well-taken, this case will be reversed and remanded to the Court of Common Pleas of Montgomery County for further proceedings consistent with this opinion.

*Judgment reversed and cause remanded.*

BROGAN, P.J., and KERNS, J., concur.

ZIEGEL, J., retired, of the Court of Common Pleas of Preble County, sitting by assignment in the Second Appellate District.