[Cite as *Sugarcreek Twp. v. Centerville*, 193 Ohio App.3d 408, 2011-Ohio-1830.]

## IN THE COURT OF APPEALS OF GREENE COUNTY, OHIO

|  |  |  |
|---|---|---|
|  | : |  |
| SUGARCREEK TOWNSHIP | | |
| Plaintiff-Appellee | : | C.A. CASE NO. 2010-CA-52 |
| v. | : | T.C. CASE NO. 2006CV0784 |
|  | : | (Civil Appeal from |
| CITY OF CENTERVILLE | | Common Pleas Court) |
| Defendant-Appellant | : | |

. . . . . . . . .

### O P I N I O N

Rendered on the 15th day of April, 2011.

. . . . . . . . .

Richard C. Brahm and Catherine A. Cunningham, for appellee.

Scott D. Phillips and Joseph W. Walker, for appellant.

Matthew J. DeTemple, for amici curiae the Ohio Township Association and Coalition of Large Ohio Urban Townships.

. . . . . . . . .

GRADY, Presiding Judge.

{¶ 1} This appeal concerns a dispute between plaintiff-appellee, Sugarcreek Township, and defendant-appellant, city of Centerville, regarding land located in Sugarcreek Township that was annexed by Centerville in 2006 pursuant to R.C. 709.023. This is the second time this dispute is before us. We issued a decision on September 11, 2009, which reversed the judgment of the trial court and remanded the cause for further proceedings.

*Sugarcreek Twp. v. Centerville*, 184 Ohio App.3d 480, 2009-Ohio-4794 ("*Sugarcreek I*").

{¶ 2}   In 2006, Centerville entered into a preannexation agreement with the owner of two parcels of real property located in Sugarcreek Township.   The annexation was an expedited type-2 annexation pursuant to R.C. 709.023, in which the annexed land nevertheless also remains part of the township from which it was annexed.   The terms of the preannexation   agreement   required   Centerville   to   enact   an   ordinance   adopting   a tax-increment-financing plan ("TIF plan") that would apply to the annexed land.   On April 20, 2006, prior to the filing of the annexation petitions with the Greene County Board of Commissioners, Sugarcreek adopted its own TIF plan that encompassed some of the annexed lands.

{¶ 3}   A TIF plan "is a method of financing that is used to pay for public improvements.   A public entity will sell bonds for public improvements and recoup the money from the increase in value of property that is enhanced by the public improvements. The property owners make service payments to a fund in lieu of property taxes, and the public entity   pays the bond obligations with the money in this fund, rather than with the public entity's general revenue fund."   *Sugarcreek I* at ¶ 24.   R.C. 5709.40 authorizes a municipality to adopt an ordinance creating a TIF plan.

{¶ 4}   In late June and early July 2006, Greene County granted Centerville's annexation petitions.   In September 2006, Sugarcreek commenced an action for declaratory judgment in the common pleas court.   In paragraph 58 of its second amended complaint, Sugarcreek sought "a declaration that Centerville may not implement a TIF on the Annexed Land, both because Sugarcreek is entitled to all real property tax receipts from the Annexed

Land and because Centerville may not adopt a TIF on land that is already covered by Sugarcreek's TIF." Sugarcreek also sought a declaration that Centerville's annexation of the two parcels of real property located in Sugarcreek Township was invalid because proper procedures were not followed in annexing the land.

{¶ 5} The parties filed motions for summary judgment in the declaratory-judgment action. The trial court found that Sugarcreek is entitled to all real property taxes collected from the two parcels of land annexed by Centerville. Therefore, Centerville could not adopt a TIF plan covering the annexed land. The court reasoned "that Centerville's commitment in the Pre-Annexation Agreement, that would result in Centerville's TIF for the annexed land, would divert real property taxes from Sugarcreek in violation of R.C. § 709.023(H)." The trial court granted Sugarcreek a declaratory judgment "that the City of Centerville may not implement a TIF on the annexed land * * * that would in any way divert real property taxes for the annexed territory from Sugarcreek Township." The trial court also found that the annexations of the two parcels of land were properly petitioned, granted, accepted, and completed in accordance with the requirements of applicable law.

{¶ 6} Centerville filed a notice of appeal from the trial court's judgment, arguing that Sugarcreek Township neither had standing to challenge the annexation nor had presented a real case or controversy. Centerville also argued that the trial court had erred in finding that a municipality may not enact a TIF plan covering property that has been annexed under the expedited annexation procedure in R.C. 709.023.

{¶ 7} Based on our review of the record before us, we held that the trial court did not err in finding that Sugarcreek had standing to bring a declaratory-judgment action and that the

controversy was ripe for adjudication. Further, we concluded:

{¶ 8} "[T]he trial court erred in part in holding that Sugarcreek is entitled to all property tax revenues from the annexed property. The trial court correctly concluded that Centerville cannot interfere with Sugarcreek's collection of real property tax revenue levied on the unimproved and improved value of the real estate that remains in the township. However, the court failed to recognize that Centerville is also entitled to its own share of the minimum levies on the property * * * and can therefore enact TIF legislation to the extent that it does not interfere with Sugarcreek's right to collect its share of the minimum levies on the property under the same statutes." *Sugarcreek I* at ¶ 4.

{¶ 9} We reversed the judgment of the trial court and remanded the cause for further proceedings consistent with our opinion. On remand, the parties could not agree on the correct application of our judgment to the parties' motions for summary judgment with regard to the TIF plan that Centerville had agreed to implement in the preannexation agreements. Following additional briefing by the parties, the trial court applied our reasoning with regard to revenue that each entity could receive from the minimum levies (or statutory "inside millage"), and further found that Centerville and Sugarcreek were entitled to their respective revenues from additional levies (or voted "outside millage") imposed by each for the annexed territory. Consequently, Centerville could not adopt a TIF plan that would affect Sugarcreek's right to its outside millage. The trial court explained:

{¶ 10} "Centerville's and Sugarcreek's shares of the outside millage, are the outside millage real property taxes voted respectively by the residents of Centerville and Sugarcreek, including residents of the annexed territory, and applicable to Centerville and Sugarcreek

respectively, including the annexed territory. Centerville may enact a TIF Plan to exempt its own share of the outside millage applicable to the annexed territory. * * * But Centerville may not enact a TIF Plan to exempt Sugarcreek's share of the outside millage, i.e., real estate taxes voted by Sugarcreek on Sugarcreek Township including the annexed territory. Those Sugarcreek real estate taxes remain subject to Sugarcreek Township pursuant to O.R.C. § 709.023(H). Otherwise the last phrase of R.C. § 709.023(H) would refer only to inside millage, a limitation not expressed or implied in the law, and, in the opinion of this Court, a conclusion not intended by the Court of Appeals' Opinion on September 11, 2009."

{¶ 11} Centerville filed a notice of appeal, raising the following two assignments of error:

FIRST ASSIGNMENT OF ERROR

{¶ 12} "The trial court erred as a matter of law in determining that a municipality cannot TIF the voted (outside) millage of a township's real property taxes on territory that has been annexed utilizing the R.C. 709.023 (expedited type-2) annexation process."

SECOND ASSIGNMENT OF ERROR

{¶ 13} "The trial court erred as a matter of law by re-construing then misapplying R.C. 709.023(H) on remand contrary to this court's construction and opinion and by adding language to R.C. 5709.40 that judicially amended the municipal TIF statute."

{¶ 14} When reviewing a trial court's grant of summary judgment, an appellate court conducts a de novo review. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105. "*De Novo* review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues

exist for trial." *Brewer v. Cleveland City Schools Bd. of Edn.* (1997), 122 Ohio App.3d 378, 383, citing *Dupler v. Mansfield Journal Co.* (1980), 64 Ohio St.2d 116, 119-120. Therefore, the trial court's decision is not granted any deference by the reviewing appellate court. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711.

{¶ 15} Centerville argues that the trial court erred and varied from our mandate in Sugarcreek I in holding that any TIF plan Centerville may adopt cannot interfere with Sugarcreek's right to revenue from the outside millage tax on the two annexed parcels that Sugarcreek imposed. Because municipal annexations are governed by statute, we necessarily refer to the sections of the Revised Code implicated by Centerville's argument.

{¶ 16} Annexation is governed by R.C. Chapter 709. R.C. 709.02 to 709.11 govern petitions for annexation filed by a majority of the owners of real property contiguous to a municipal corporation. Prior to the enactment of S.B. 5 in 2001, once a municipality annexed contiguous land that was situated in a township, the municipality then had to petition the county's board of commissioners to conform the resulting new boundaries of the municipality and the township pursuant to R.C. 503.07. *Sugarcreek I* at ¶ 104. If a municipality failed to so petition, the annexed property became part of the municipal corporation but also remained part of the township. The taxpayers in the annexed area then resided both in the city and in the township and were obligated to pay both taxes levied by the township and taxes levied by the municipality. Id. at ¶ 106. If, however, a municipality successfully petitioned to conform the boundaries pursuant to R.C. 503.07, the annexed land was no longer a part of the township, but the municipality then was required to pay the township real property tax on the annexed area. R.C. 709.19. "This indicates an intent to benefit townships, by allowing

payment whenever any taxable property is excluded from the township." *Sugarcreek I* at ¶ 111.

**{¶ 17}** S.B. 5 was enacted in 2001. Among other things, the bill provided for an expedited type-2 annexation procedure. The section governing that form of annexation is R.C. 709.023. *Sugarcreek I* at ¶ 97-98. The section is not analogous to any sections of the Revised Code enacted prior to 2001. Id. at ¶ 98. R.C. 709.023 provides for an expedited annexation procedure in which the land annexed may not be excluded from the township pursuant to the boundary conformity provisions of R.C. 503.07, and therefore remains a part of the township. R.C. 709.023(A). R.C. 709.023(H) provides:

**{¶ 18}** "*Notwithstanding anything to the contrary in section 503.07 of the Revised Code*, unless otherwise provided in an annexation agreement entered into pursuant to section 709.192 of the Revised Code or in a cooperative economic development agreement entered into pursuant to section 701.07 of the Revised Code, *territory annexed into a municipal corporation pursuant to this section shall not at any time be excluded from the township under section 503.07 of the Revised Code and, thus, remains subject to the township's real property taxes*." (Emphasis added.)

**{¶ 19}** The issue in the present case is whether R.C. 709.023(H), and particularly its final clause, precludes Centerville from adopting a TIF plan that diminishes the tax revenue to which Sugarcreek is entitled from the outside millage that Sugarcreek imposes on land covered by the proposed Centerville TIF plan. It is undisputed that Centerville's TIF plan may not affect Sugarcreek's right to tax revenue from its share of the statutory inside millage, per *Sugarcreek I*.

{¶ 20} Townships, like municipalities, are taxing authorities, R.C. 5705.01(A) and (C), and, like municipalities, townships have authority to tax coextensively within their borders. R.C. 5705.03; *Roderer v. Miami Twp. Bd. of Trustees* (1983), 14 Ohio App.3d 155, 158. R.C. 709.023(H) precludes a municipality that annexes land from a township through an expedited type-2 annexation from petitioning to conform its boundaries pursuant to R.C. 503.07, and further provides that the annexed land "remains subject to the township's real property taxes." Because Sugarcreek may tax coextensively with its borders, Sugarcreek remains authorized after an expedited type-2 annexation to the revenue from the outside millage tax that Sugarcreek imposed on the two parcels of land that Centerville annexed. Consistent with Sugarcreek's right in that respect, Centerville may not adopt a TIF plan that diminishes the tax revenue from outside millage that Sugarcreek remains entitled to receive.

{¶ 21} Centerville argues that the plain language of R.C. 709.023(H) merely precludes Centerville from conforming the boundaries of Centerville and Sugarcreek under R.C. 503.07, and does not preclude Centerville from adopting a TIF ordinance under R.C. 5709.40 that limits Sugarcreek's ability to collect property taxes on the annexed property. As we explained in our prior opinion, however, "R.C. 709.023(H) is not quite as narrow as Centerville contends. R.C. 709.023(H) does not merely indicate that boundaries may not be conformed; it also clearly states that [as a consequence of that prohibition,] the annexed property 'remains subject to the township's real property taxes.'" *Sugarcreek I* at ¶ 134. We believe that the plain language of R.C. 709.023(H) precludes Centerville from enacting a TIF plan that would prevent Sugarcreek from collecting the property taxes, whether in the form of inside millage or outside millage, to which it is entitled.

{¶ 22} Centerville argues that it should be able to adopt a TIF plan that affects Sugarcreek's voted outside millage because the legislature could have amended R.C. 5709.40(F) to prevent such a result, but it did not. R.C. 5709.40(C)(1) provides:

{¶ 23} "The legislative authority of a municipal corporation may adopt an ordinance creating an incentive district and declaring improvements to parcels within the district to be a public purpose and, except as provided in division (F) of this section, exempt from taxation as provided in this section * * *."

{¶ 24} R.C. 5709.40(F)(1) through (12) identifies 12 local tax levies that are excepted from the TIF plan tax exemption authorized by R.C. 5709.40(C)(1). Township real property taxes are not included among the 12 exceptions. According to Centerville, the failure of the legislature to include an exception for township real property taxes in R.C. 5709.40(F) demonstrates that the legislature did not intend to preclude municipalities from enacting TIF plans that interfere with the township's authority to tax property within its borders. We do not agree.

{¶ 25} In matters of statutory interpretation, expression of one thing generally suggests exclusion of others. The 12 exceptions in R.C. 5709.40(F) were not added until well after the passage of S.B. 5, authorizing expedited type-2 annexation. However, it was not necessary to include an exception for expedited type-2 annexations in R.C. 5709.40(F) because the saving clause in R.C. 709.023(H), specifying that land thus annexed "remains subject to the township's real property taxes," served the same purpose. The expression of legislative intent is the same under either alternative.

{¶ 26} Further, our interpretation of R.C. 709.023(H) is consistent with the

legislature's intent to benefit townships. For example, pursuant to R.C. 709.19(C)(2), a municipality that conforms boundaries under R.C. 503.07 must continue to make tax payments to a township even after the municipality has exempted the annexed property from the township's real property taxes through a TIF plan adopted pursuant to R.C. 5709.40. *Sugarcreek I* at ¶ 115-116; R.C. 709.19(C)(2). It would be an absurd result to then permit municipalities that are precluded by R.C. 709.023(H) from conforming boundaries to adopt a TIF plan that limits a township's ability to impose taxes on and receive tax payments for property within its borders.

{¶ 27} Centerville also argues that, being a special provision, R.C. 5709.40(F) prevails over R.C. 709.023(H), which is the more general provision, pursuant to R.C. 1.51. However, R.C. 1.51 applies only when a "conflict between the provisions is irreconcilable." Id. Otherwise, the provisions "shall be construed, if possible, so that effect is given to both." Id. That outcome is readily available here.

{¶ 28} R.C. 709.023(H) and 5709.40 should be read in pari materia to permit a municipal corporation to adopt a TIF ordinance affecting real property located within the municipality pursuant to R.C. 5709.40, except to the extent that the real property "remains subject to the real property taxes," R.C. 709.023(H), of a township in which the real property likewise remains located following a type-2 annexation. Therefore, the TIF plan that Centerville enacts cannot diminish the outside millage taxes on the real property at issue imposed by Sugarcreek Township or the revenue therefrom to which the township is entitled.

{¶ 29} The assignments of error are overruled. The judgment of the trial court is

affirmed.

Judgement affirmed.

F<small>AIN</small> and F<small>ROELICH</small>, JJ., concur.

_____