[Cite as *Sugarcreek Twp. v. Centerville*, 2014-Ohio-863.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE   COUNTY**

| | | |
|---|---|---|
| SUGARCREEK TOWNSHIP | : | |
| | : | Appellate Case Nos. 2013-CA-16 |
| Plaintiff-Appellant/Cross-Appellee | : | 2013-CA-17 |
| | : | |
| v. | : | Trial Court Case No. 06-CV-784 |
| | : | |
| CITY OF CENTERVILLE, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee/Cross-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of March, 2014.

. . . . . . . . . .

SCOTT D. PHILLIPS, Atty. Reg. #0043654, Frost Brown Todd LLC, 9277 Centre Pointe Drive, Suite 300, West Chester, Ohio 45069
        Attorney for Plaintiff-Appellant/Cross-Appellee, Sugarcreek Township

RICHARD C. BRAHM, Atty. Reg. #0009481, and CATHERINE A. CUNNINGHAM, Atty. Reg. #0015730, Kegler, Brown, Hill & Ritter, 65 East State Street, Suite 1800, Columbus, Ohio 43215
        Attorneys for Defendant-Appellee/Cross-Appellant, City of Centerville

SCOTT A. LIBERMAN, Atty. Reg. #0058432, Altick & Corwin Co., LPA, One South Main Street, Suite 1590, Dayton, Ohio 45402
        Co-Counsel for Defendant-Appellee/Cross-Appellant, City of Centerville

JOHN CLOUD, Atty. Reg. #0006262, Rogers & Greenberg, LLP, 2160 Kettering Tower, Dayton, Ohio 45423

Attorney for Defendant-Appellee, Dille Laboratories Corp. and the
Charles A. Dille Trust dated January 16, 1998

. . . . . . . . . . . . .

HALL, J.,

{¶ 1}     Sugarcreek Township appeals from the trial court's March 1, 2013 judgment entry addressing the City of Centerville's intention to implement a tax-increment financing (TIF) plan for property it annexed. Centerville has cross appealed from the same judgment.

{¶ 2}     The record reflects that the trial court filed its judgment entry after two prior decisions by this court and, ultimately, a reversal and remand from the Ohio Supreme Court. The facts underlying the parties' dispute are detailed in *Sugarcreek Twp. v. Centerville*, 184 Ohio App.3d 480, 2009-Ohio-4794, 921 N.E.2d 655 ("*Sugarcreek I*"), which resolved the first appeal. Briefly, in 2006 Centerville annexed two parcels of property located in Sugarcreek Township. The process used is known as an "expedited type-2 annexation." Under that process, the annexed land still remained part of Sugarcreek. In conjunction with the annexation, Centerville entered into agreements with the property owner and a developer for commercial development of the land. The agreements provided for Centerville to create a TIF plan covering the annexed property. Such a plan temporarily exempts from city and township property taxes some portion of improvements made to the annexed property to promote economic development.

{¶ 3}     After the foregoing agreements were reached, Sugarcreek filed suit seeking, inter alia, a declaration that Centerville could not establish a TIF plan covering the land at issue. The trial court filed a March 2009 judgment finding, among other things, that enacting a TIF plan covering the annexed land would violate R.C. 709.23(H). On appeal in *Sugarcreek I*, this court found that Centerville and Sugarcreek both could tax the annexed land because it remained in both jurisdictions. This court then engaged in a lengthy discussion of statutory "inside millage,"

also known as a "minimum levy." This court explained in *Sugarcreek I* that property taxes not exceeding a ten-mill limit are referred to as inside millage or a minimum levy and may be imposed without voter approval. Property taxes exceeding a ten-mill limit are referred to as outside millage and require voter approval. In *Sugarcreek I*, this court determined that Centerville and Sugarcreek were required to share tax revenues on inside millage for the annexed property. This court also held that Centerville could not enact a TIF plan that would interfere with Sugarcreek's share of the inside millage. No appeal was taken from that decision.

{¶ 4}     On remand to the trial court, a dispute arose regarding whether Centerville could enact a TIF plan that would interfere with Sugarcreek's share of tax revenue from outside millage.   The trial court concluded that Centerville could not adopt a TIF plan that would affect Sugarcreek's right to its outside millage. This court affirmed in *Sugarcreek Twp. v. Centerville*, 193 Ohio App.3d 408, 2011-Ohio-1830, 952 N.E.2d 519 ("*Sugarcreek II*"), reasoning "that the plain language of R.C. 709.023(H) precludes Centerville from enacting a TIF plan that would prevent Sugarcreek from collecting property taxes, whether in the form of inside millage or outside millage, to which it is entitled." *Sugarcreek II* at ¶ 21. Centerville appealed from that decision.

{¶ 5}     In *Sugarcreek Twp. v. Centerville*, 133 Ohio St.3d 467, 2012-Ohio-4649, 979 N.E.2d 261 ("*Sugarcreek III*"), the Ohio Supreme Court reversed this court's judgment in *Sugarcreek II*. Without distinguishing between inside and outside millage, it couched the issue as "whether a municipality may adopt a TIF that temporarily exempts from township taxes a portion of the value of an improvement on land within a township that has been annexed using the expedited type-2 annexation method and is subject to a municipal TIF, or whether a municipal

TIF may not affect the property taxes received by the township." *Id*. at ¶ 17. The Ohio Supreme Court unanimously held "that a municipality may adopt a TIF that temporarily exempts improvements to the annexed property from township property taxes as well as municipal taxes." *Id.* In summarizing its reasoning, the Ohio Supreme Court explained:

> When township land has been annexed using the expedited type-2 process established by R.C. 709.023, the township retains the ability to tax revenues on the annexed land. But while R.C. 709.023(H) ensures that the annexed land "remains subject to the township's real property taxes," the statute does not grant townships the unfettered ability to collect any and all taxes that may arise from the real property or improvements to the real property. The annexing municipality may accordingly adopt a tax-increment financing plan under R.C. 5709.40 that temporarily exempts improvements to the annexed property from city and township property taxes on [sic] to support the annexed property's economic development.

*Id.* at ¶ 27.

{¶ 6} On remand from the Ohio Supreme Court, the trial court filed the judgment entry that underlies the present appeal. In its entirety, the trial court's entry reads:

> This matter comes before the Court on remand from the Ohio Supreme Court. The issue decided by the court involves an expedited type-2 annexation of property located in Sugarcreek Township (Township) by the City of Centerville (City), and the City's ability to adopt a tax-increment financing (TIF) plan for the annexed land that affects the Township's outside millage. The court reversed a

decision by the Second District Court of Appeals where the appellate court held that *the plain language of R.C. 709.023(H) precludes Centerville from enacting a TIF plan that would prevent Sugarcreek from collecting the property taxes, whether in the form of inside millage or outside millage, to which it is entitled.* See *Sugarcreek Twp. v. Centerville*, 193 Ohio App.3d 408, 2011-Ohio-1830; R.C. 5705.31. In reversing the court, the Ohio Supreme Court held that *the annexing municipality may accordingly adopt a tax-increment financing plan under R.C. 5709.40 that temporarily exempts improvements to the annexed property from city or township property taxes on to support the annexed property's economic development.* Justice Lanzinger writing for the court went on to find that *R.C. 5709.40(C)(4) caps the amount of taxes that may be exempted under the TIF at 75 percent. Townships continue to collect their full share of taxes on the unimproved portion of the property. Townships will also be entitled to collect taxes on 25 percent of the value of any improvements to the annexed land* . . . unless the municipality receives approval from the affected school boards of education to exclude more than 75 percent. *See Sugarcreek Twp. v. Centerville*, 133 Ohio St.3d 467.

Therefore, this Court finds that the City is permitted to develop a TIF plan on property annexed from the Township that affects the Township's outside millage pursuant to an expedited type-2 annexation. Also, this Court notes that neither party appealed the decision by the Second District Court of Appeals wherein it held: *Centerville's TIF plan may not affect Sugarcreek's right to tax*

*revenue from its share of the inside millage. See Sugarcreek Twp. v. Centerville*, 184 Ohio App.3d 480, 2009-Ohio-4794; *see also Sugarcreek Twp. v. Centerville*, 193 Ohio App.3d 408, 2011-Ohio-1830; R.C. 5705.31.

Accordingly, this case is dismissed with prejudice. The parties shall pay their respective costs.

(Italics sic) (Doc. #284 at 1-2).

**{¶ 7}** In its sole assignment of error, Sugarcreek contends the trial court "erred by interpreting the Supreme Court's holding such that Centerville may exempt more than 75 percent of the value of the annexed land's improvements for a period in excess of 10 years." Sugarcreek insists that *Sugarcreek III* "does not allow Centerville to exempt more than 75 percent of the value of the improvements to the type-2 annexed lands for a period in excess of 10 years, even if the affected school districts approve." Sugarcreek claims the Ohio Supreme Court's holding dictates that Centerville *may not* TIF more than 75 percent of the value of improvements for more than ten years, regardless of school-district approval.

**{¶ 8}** Upon review, we disagree with Sugarcreek. The Ohio Supreme Court recognized that a municipality may exempt improvements to real property from taxation through a TIF plan. *Sugarcreek III* at ¶ 6. Citing R.C. 5709.40(C)(4), it also recognized that, absent school-board approval, a TIF plan may not exceed ten years or exempt more than 75 percent of the value of improvements from taxation. *Id.* at ¶ 7. As noted above, the Ohio Supreme Court framed the issue before it as "whether a municipality may adopt a TIF that temporarily exempts from township taxes *a portion of the value* of an improvement on land within a township that has been annexed using the expedited type-2 annexation method and is subject to a municipal TIF, or

whether a municipal TIF may not affect the property taxes received by the township." *(Emphasis added)*. *Id*. at ¶ 17. The Ohio Supreme Court proceeded to consider Centerville's ability to enact a 75 percent, ten-year TIF and found such a plan permissible. *Id*. at ¶ 22-26.

{¶ 9} Contrary to Sugarcreek's argument, we do not read the Ohio Supreme Court's holding as deciding Centerville's ability to enact a TIF exceeding ten years or exempting more than 75 percent of the value of improvements from taxation. That issue was not before the Ohio Supreme Court, and it is not before us. It is important to remember that the TIF dispute arose in the context of a declaratory judgment action. In *Sugarcreek I*, this court recognized that Centerville's annexation agreements expressly obligated it to create a TIF "without approval from a school district." *Sugarcreek I* at ¶ 20. In other words, the only TIF Centerville contemplated when Sugarcreek sought a declaratory judgment involved a 75 percent, ten-year exemption pursuant to R.C. 5709.40(C)(4). Presumably, that is why the Ohio Supreme Court focused on Centerville's ability to exempt only *a portion* of the value of improvements to the annexed property. Moreover it is speculation to conclude that Centerville would ever be able to acquire school-board approval. Because the record does not reflect Centerville seeking, or intending to seek, or ever acquiring school-board approval of a greater TIF, no justiciable controversy exists for declaratory-judgment purposes regarding Centerville's ability to enact a TIF exceeding ten years or exempting more than 75 percent of the value of improvements from taxation. Nothing in the trial court's judgment entry on remand is to the contrary. The trial court did not decide whether Centerville could enact a TIF exceeding 75 percent or ten years. In the challenged portion of its ruling, the trial court simply cited the Ohio Supreme Court's recognition that a statute, R.C. 5709.40(C)(4), caps TIF plans absent school-board approval. *See Sugarcreek*

*III* at ¶ 24, 26. Accordingly, Sugarcreek's assignment of error is overruled.

{¶ 10} In its cross appeal, Centerville contends the trial court erred in holding that it cannot enact a TIF plan that would interfere with Sugarcreek's share of tax revenue from inside millage.

{¶ 11} Centerville's argument concerns the following language near the end of the trial court's judgment entry: "Also, this Court notes that neither party appealed the decision by the Second District Court of Appeals wherein it held: *Centerville's TIF plan may not affect Sugarcreek's right to tax revenue from its share of the inside millage*." (Emphasis sic) (Doc. #284 at 2). Centerville reasonably infers from the foregoing statement a determination by the trial court that Sugarcreek's share of the property tax from inside millage is not subject to a TIF plan. Centerville contends this conclusion is at odds with *Sugarcreek III*. According to Centerville, the plain import of *Sugarcreek III* is that it may adopt a TIF plan affecting Sugarcreek's *inside* and *outside* millage.

{¶ 12} For its part, Sugarcreek claims this court's unappealed ruling in *Sugarcreek I*, which held that Centerville could not TIF Sugarcreek's share of the inside millage, is governed by the law of the case and was not overruled by the Ohio Supreme Court in *Sugarcreek III*. Sugarcreek stresses that *Sugarcreek III* was before the Ohio Supreme Court on an appeal from this court's decision in *Sugarcreek II*, which involved Centerville's ability to TIF *outside* millage. Sugarcreek insists that nothing in the Ohio Supreme Court's recent opinion overturned this court's unappealed decision regarding *inside* millage in *Sugarcreek I*.

{¶ 13} Upon review, we find Sugarcreek's argument to be unpersuasive. In *Sugarcreek I*, this court held that Centerville could not TIF Sugarcreek's share of the *inside* millage. In

*Sugarcreek II*, this court held that Centerville could not TIF Sugarcreek's share of the *outside* millage. At one point in *Sugarcreek II*, we opined that R.C. 709.023(H) "precludes Centerville from enacting a TIF plan that would prevent Sugarcreek from collecting the property taxes, *whether in the form of inside millage or outside millage*[.]" (Emphasis added) *Sugarcreek II* at ¶ 21. The ability to TIF inside millage was not before us in *Sugarcreek II*, however, as it had been resolved in *Sugarcreek I*, a fact this court explicitly recognized. *See Sugarcreek II* at ¶ 19 ("It is undisputed that Centerville's TIF plan may not affect Sugarcreek's right to tax revenue from its share of the statutory inside millage, per *Sugarcreek I*.").

{¶ 14}  If not for the Ohio Supreme Court's subsequent decision in *Sugarcreek III*, we would agree with Sugarcreek that the law of the case doctrine applies and that, pursuant to our unappealed decision in *Sugarcreek I*, Centerville cannot TIF the inside millage. Having examined *Sugarcreek III*, however, we believe the Ohio Supreme Court not only reversed this court's decision in *Sugarcreek II* with regard to outside millage, but also necessarily overruled *Sugarcreek I* with regard to inside millage. To explain why, we must engage in a more detailed review of *Sugarcreek I*, *II*, and *III*.

{¶ 15}  In *Sugarcreek I*, this court focused on two statutes in finding that Centerville could not TIF Sugarcreek's share of the inside millage. The first, R.C. 709.023(H), provides that in an expedited type-2 annexation the annexed territory "remains subject to the township's real property taxes." The second, R.C. 5705.315, provides, with exceptions not applicable here, that "the minimum levy [i.e., inside millage] for the municipal corporation and township * * * shall not be diminished[.]" In an effort to reconcile these statutes with R.C. 5709.40, which authorizes TIF plans, this court reasoned: "Sugarcreek and Centerville may enact TIF resolutions that

exempt improvements on real property within the annexation area, including the assessed value of improvements to the real property, from real property taxation. However, Sugarcreek and Centerville may not enact TIF resolutions that interfere with each other's share of the minimum levies on the real property within the annexation area." *Sugarcreek I* at ¶ 174.

{¶ 16} In *Sugarcreek II*, this court focused on the first statute, R.C. 790.023(H). As noted above, we concluded that R.C. 709.023(H) "precludes Centerville from enacting a TIF plan that would prevent Sugarcreek from collecting the property taxes, whether in the form of inside millage or outside millage[.]" *Sugarcreek II* at ¶ 21.

{¶ 17} In *Sugarcreek III*, the Ohio Supreme Court also focused on R.C. 709.023(H). While noting this court's distinction between inside and outside millage in *Sugarcreek I*, the Ohio Supreme Court did not draw such a distinction. With regard to R.C. 709.023(H), it noted that land annexed under an expedited type-2 procedure remains part of the township and "remains subject to the township's real property taxes." *Sugarcreek III* at ¶ 5. Contrary to this court's prior interpretation, however, the Ohio Supreme Court reasoned that R.C. 709.023(H) recognizes a township's right to tax after an expedited type-2 annexation but, at the same time, does not prevent a municipality from enacting a TIF that temporarily exempts the subject property from taxation. *Id.* at ¶ 20-23. The Ohio Supreme Court explained:

> When township land has been annexed using the expedited type-2 process established by R.C. 709.023, the township retains the ability to tax revenues on the annexed land. But while R.C. 709.023(H) ensures that the annexed land "remains subject to the township's real property taxes," the statute does not grant townships the unfettered ability to collect any and all taxes that may arise from the real

property or improvements to the real property. The annexing municipality may accordingly adopt a tax-increment financing plan under R.C. 5709.40 that temporarily exempts improvements to the annexed property from city and township property taxes on [sic] to support the annexed property's economic development. * * *.

*Id.* at ¶ 27.

{¶ 18} In light of *Sugarcreek III*, it now is apparent that R.C. 703.023(H) does not preclude Centerville from enacting a TIF plan that interferes with Sugarcreek's collection of inside or outside millage. This court's statement to the contrary in *Sugarcreek II* is no longer good law. As the Ohio Supreme Court explained, R.C. 703.023(H) guarantees a township the continued ability to tax but does not prevent a municipality from temporarily exempting the annexed property from taxation.

{¶ 19} The only remaining question is whether *Sugarcreek III* necessarily overruled this court's opinion in *Sugarcreek I*, insofar as we relied on R.C. 5705.315 to find that Centerville could not TIF Sugarcreek's share of the inside millage. As noted above, R.C. 5705.315 provides, with exceptions not applicable here, that "the minimum levy [i.e., inside millage] for the municipal corporation and township * * * shall not be diminished[.]" When read in context, this language addresses the calculation and division of inside millage in situations involving overlapping political subdivisions to comply with a statutory ten-mill limit. *Sugarcreek I* at ¶ 141-158. Similar to R.C. 709.023(H), however, it does not guarantee that a township will receive such inside millage without interference from a TIF plan.

{¶ 20} In much the same way that R.C. 709.023(H) authorizes a township to collect

taxes post-annexation but does not prevent a municipality from enacting a TIF that temporarily exempts the property from taxation, R.C. 5705.315 establishes a framework for calculating and dividing inside millage post-annexation but does not prevent a municipality from enacting a TIF that temporarily exempts the property from inside millage. This conclusion flows logically from the Ohio Supreme Court's treatment of R.C. 709.023(H) and, perhaps more importantly, from its recognition in *Sugarcreek III* that another statute, R.C. 5709.40(F), "enumerates the types of tax levies for which * * * [a] township will receive funds despite the TIF that directs service payments toward public infrastructure improvements." *Sugarcreek III* at ¶ 23. Notably absent from the enumerated levies not subject to exemption by a TIF plan are township real property taxes, whether in the form of inside or outside millage.[1] In *Sugarcreek III*, the Ohio Supreme Court stressed that a court cannot create a TIF exception where the legislature has not provided one. *Id.*

{¶ 21}   In short, we are compelled to conclude that *Sugarcreek III* necessarily overruled *Sugarcreek I* with regard to this court's holding that Centerville could not enact a TIF plan that would interfere with Sugarcreek's share of the inside millage. The language and rationale employed by the Ohio Supreme Court support no other conclusion. Accordingly, Centerville's assignment of error on cross appeal is sustained.

---

[1] In *Sugarcreek II*, this court acknowledged that R.C. 5709.40(F) does not exempt township property taxes from municipal TIF plans. *Sugarcreek II* at ¶ 22-25. This court was not troubled by the omission, however, because it found that R.C. 709.023(H) essentially served the same purpose. *Id.* Specifically, this court reasoned that R.C. 709.023(H) precluded Centerville from enacting a TIF plan affecting Sugarcreek's inside or outside millage by specifying that the annexed property "remains subject to the township's real property taxes." *Id.* at ¶ 25. In light of *Sugarcreek III*, it now is apparent that R.C. 709.023(H) *does not* exempt township property taxes from a municipal TIF. Therefore, the fact that R.C. 5709.40(F) also does not exempt township real property taxes, whether in the form of inside or outside millage, from a municipal TIF is significant. In fact, in the wake of *Sugarcreek III*, the absence of such an exemption in R.C. 5709.40(F) means that nothing precludes Centerville from enacting a TIF plan affecting both Sugarcreek's inside and outside millage.

**{¶ 22}** The trial court's judgment is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion. Contrary to Sugarcreek's argument, we see no justiciable controversy regarding whether Centerville may exempt more than 75 percent of the value of the annexed land's improvements for a period exceeding ten years. The Ohio Supreme Court had no occasion to resolve that issue in *Sugarcreek III*. The trial court's judgment is reversed, however, insofar as it relied on *Sugarcreek I* to declare that Centerville cannot TIF Sugarcreek's share of the inside millage. In our view, that aspect of *Sugarcreek I* is no longer good law after the Ohio Supreme Court's ruling in *Sugarcreek III*.

. . . . . . . . . . . . .

FROELICH, P.J., and WELBAUM, J., concur.

Copies mailed to:

Scott D. Phillips
Richard C. Brahm
Catherine A. Cunningham
Scott A. Liberman
John Cloud
Hon. Stephen Wolaver