SUGARCREEK TOWNSHIP, APPELLEE, *v*. THE CITY OF CENTERVILLE,
APPELLANT.

[Cite as *Sugarcreek Twp. v. Centerville*, 133 Ohio St.3d 467, 2012-Ohio-4649.]

*Real property taxation—Annexation by municipality of property within
township—Effect of municipal tax-increment financing on township
taxes—R.C. 709.023 and 5709.40.*

(No. 2011-0926—Submitted April 3, 2012—Decided October 11, 2012.)

APPEAL from the Court of Appeals for Greene County,

No. 2010-CA-52, 193 Ohio App.3d 408, 2011-Ohio-1830.

_____

**SYLLABUS OF THE COURT**

Although a township continues to receive tax revenue on property that a
municipality annexes through an expedited type-2 process under R.C.
709.023, the municipality may adopt a tax-increment financing plan under
R.C. 5709.40 that temporarily exempts from city and township property
taxes a portion of the improvements made to the annexed property to
encourage the annexed property's economic development.

_____

LANZINGER, J.

{¶ 1}  This case involves the interplay between a municipality's so-called
expedited type-2 annexation of real property located within a township pursuant
to R.C. 709.023 and the municipality's tax-increment financing ("TIF") created
pursuant to R.C. 5709.40 to encourage development of that property.  We hold
that although a township continues to receive tax revenue on property that a
municipality annexes through an expedited type-2 process under R.C. 709.023,

the municipality may adopt a TIF plan under R.C. 5709.40 that temporarily exempts from city and township property taxes a portion of the improvements made to the annexed property to encourage the annexed property's economic development.

## I. Preliminary Principles

{¶ 2}  Our resolution of this case depends upon the effect of Ohio's TIF statute upon land subjected to an expedited type-2 annexation.  Before considering the facts and issues present in this case, it is helpful to conduct a brief overview of Ohio's annexation and TIF laws.

*A. Annexation*

{¶ 3}  We have observed that "it is the policy of the state of Ohio to encourage annexation by municipalities of adjacent territory."  *Middletown v. McGee*, 39 Ohio St.3d 284, 285, 530 N.E.2d 902 (1988).  In Ohio, the traditional method of annexation is codified in R.C. 709.02 to 709.11.  This method requires a number of steps before the annexation occurs, including requirements that owners submit an application for annexation to the board of county commissioners and that the board hold a hearing on the application.  This method gives the board of county commissioners some discretion over whether the application for annexation is granted.  R.C. 709.033.  Under this traditional form of annexation, land annexed from a township remains part of that township until the municipal corporation acts to change the township boundaries pursuant to R.C. 503.07.

{¶ 4}  In 2001, the General Assembly enacted legislation creating three special procedures for expedited annexation.  Am.Sub.S.B. No. 5, 149 Ohio Laws, Part I, 621.  An expedited type-1 annexation requires consent of all parties involved, including the municipality, the township or townships, and the land owners.  R.C. 709.022.  An expedited type-2 annexation allows for expedited annexation when all property owners agree. R.C. 709.023.  An expedited type-3

annexation also requires consent of all property owners and permits annexation for a significant economic development project. R.C. 709.024.

{¶ 5} The expedited type-2 annexation process under R.C. 709.023 is at issue in this case. As part of this process, when all of the owners of property subject to annexation approve of the annexation and meet the statutory requirements for filing the petition, the board of county commissioners is required to grant the annexation. R.C. 709.023(F). R.C. 709.023(G) specifies that no appeal may be taken from the board's entry granting the annexation. R.C. 709.023(H) ensures that unless the township agrees to exclude the annexed land from the township, the annexed land will remain part of the township. Furthermore, R.C. 709.023(H) specifies that the annexed territory "remains subject to the township's real property taxes." The meaning of this clause is the heart of this case.

*B. Tax-Increment Financing*

{¶ 6} The General Assembly has enacted a variety of laws to promote economic development in Ohio. One such law for spurring economic growth is TIF, by which improvements to real property are exempted from taxation, and the funds that would have been applied toward taxes are instead applied toward public improvements that benefit the property within the area subject to the TIF. R.C. 5709.40 grants municipalities the power to establish a TIF. According to the statute, a municipal corporation "may adopt an ordinance creating an incentive district and declaring improvements to parcels within the district to be a public purpose and * * * exempt from taxation." R.C. 5709.40(C)(1). "Improvement," as applicable here, is increased assessed valuation of the real property subject to the TIF. R.C. 5709.40(A)(4).[1] Instead of paying real property taxes on the

---

1. R.C. 5709.40(A) provides, "As used in this section: * * * (4) 'Improvement' means the *increase* in the assessed value of any real property that would first appear on the tax list and duplicate of

improvements to land within the incentive district, property owners make "service payments" pursuant to R.C. 5709.42, and those service payments are used to finance designated public infrastructure improvements in the district. R.C. 5709.40(C)(3)(a). The municipal ordinance establishing the TIF

> shall specify the life of the incentive district and the percentage of the improvements to be exempted, shall designate the public infrastructure improvements made, to be made, or in the process of being made, that benefit or serve, or, once made, will benefit or serve parcels in the district.

*Id.* R.C. 5709.40(C)(4) specifies:

> Except with the approval of the board of education of each * * * school district within the territory of which the incentive district is or will be located, * * * the life of an incentive district shall not exceed ten years, and the percentage of improvements to be exempted shall not exceed seventy-five per cent.

The TIF exemption expires on the date specified in the ordinance or on the date on which the public improvements are paid for in full, whichever occurs first. R.C. 5709.40(G).

{¶ 7} In other words, a municipality may enact a TIF establishing an incentive district exempting from local real estate taxes improvements to real property within the district. Instead of paying real estate taxes, the owners of exempted property make service payments to cover the cost of public

___

real and public utility property after the effective date of an ordinance adopted under this section were it not for the exemption granted by that ordinance." (Emphasis added.)

improvements in the incentive district, such as roads, water and sewer lines, or environmental remediation. R.C. 5709.40(A)(7), (B), and (C)(1). Unless approval has been obtained from affected boards of education, the TIF lasts no longer than ten years and may exempt only up to 75 percent of the taxes on the improvements to the real property within the district. R.C. 5709.40(C)(4).

{¶ 8} With this background in mind, we turn to this discretionary appeal, which asks whether a city TIF may be applied to township property that was subject to an expedited type-2 annexation.

## II. Facts

{¶ 9} The property involved in this litigation consists of 268 acres located on both sides of Interstate 675 at the Wilmington Pike interchange in Greene County adjacent to appellant city of Centerville ("the City") in appellee Sugarcreek Township ("the Township"). In April 2006, the City entered into preannexation agreements with the property owners of that area. The agreements specified that a third-party developer intended to purchase the property from the owners for a multiuse development. As part of the agreements, the land was to be annexed to the City, and in return the City would create a TIF.

{¶ 10} All of the property owners signed and submitted petitions to the Greene County Board of Commissioners in May 2006 to annex the property pursuant to R.C. 709.023. The Greene County Board of Commissioners granted the annexation petitions in June and July 2006, and the City accepted the annexations in October 2006. Because this was an expedited type-2 annexation, and the parties did not agree otherwise, R.C. 709.023(H) applied and provided that the City's annexed land also remained a part of the Township:

> Notwithstanding anything to the contrary in section 503.07 of the Revised Code, unless otherwise provided in an annexation agreement entered into pursuant to section 709.192 of the Revised

Code or in a cooperative economic development agreement entered into pursuant to section 701.07 of the Revised Code, territory annexed into a municipal corporation pursuant to this section shall not at any time be excluded from the township under section 503.07 of the Revised Code and, thus, remains subject to the township's real property taxes.

{¶ 11} In September 2006, before the annexation was completed, the Township filed an action for declaratory judgment seeking in part a declaration that the City could not establish a TIF as the property owners and the City had agreed to do. The trial court granted the Township's motion for partial summary judgment on the TIF issue, concluding that real estate taxes would be diverted from the Township in violation of R.C. 709.023(H). The trial court accordingly declared that the City could not implement a TIF on the annexed land of the Township.

{¶ 12} The Second District Court of Appeals, however, recognized that both the City and the Township are entitled to tax the land because the land is within each entity's borders. 184 Ohio App.3d 480, 2009-Ohio-4794, 921 N.E.2d 655, ¶ 171 (2d Dist.). The court of appeals distinguished between inside and outside millage. R.C. 5705.02 establishes that

> [t]he aggregate amount of taxes that may be levied on any taxable property in any subdivision or other taxing unit shall not in any one year exceed ten mills on each dollar of tax valuation of such subdivision or other taxing unit, except for taxes specifically authorized to be levied in excess thereof.

Taxes falling below this ten-mill limit are referred to as minimum levies or inside millage, while voter-approved taxes exceeding the ten-mill limit are referred to as additional levies or outside millage.

{¶ 13} The court of appeals held that both entities were entitled to retain their minimum levies on the property within the annexation area, reduced to an amount within the ten-mill inside-millage limit in the manner prescribed by R.C. 5705.31. *Id.* at ¶ 172. The court also held that both the Township and the City were authorized to enact TIF resolutions that exempt from taxation improvements on real property within the annexation area but that neither could enact TIF resolutions that would interfere with the other's share of the minimum levies on the annexed property. *Id.* at ¶ 174. Because the trial court's decision prevented the City from enacting even a TIF ordinance that did not interfere with the Township's right to collect its share of the minimum levies on the property, the court of appeals reversed the trial court's judgment and remanded the case. *Id.* at ¶ 176-178.

{¶ 14} On remand, the parties disputed whether the City could enact a TIF on the Township's outside millage. The trial court concluded that "the TIF statutes do not allow Centerville to TIF outside millage real property taxes allowed by statute and reserved to the township by operation of R.C. § 709.023(H)." The trial court stated further that "when voters of Sugarcreek Township, including voters of the annexed territory, have voted for and authorized outside millage levies, those levies are not subject to a TIF Plan and exemption enacted by Centerville for the annexed territory."

{¶ 15} Once again, the City appealed, arguing that it had the authority to adopt a TIF plan for the annexed land that affects the Township's outside millage. 193 Ohio App.3d 408, 2011-Ohio-1830, 952 N.E.2d 519, ¶ 15 (2d Dist.). The City also asserted that the plain language of R.C. 709.023(H) does not preclude it from adopting a TIF ordinance under R.C. 5709.40 that limits the Township's

ability to collect property taxes on the annexed land. *Id.* at ¶ 21. The court of appeals held that "the plain language of R.C. 709.023(H) precludes Centerville from enacting a TIF plan that would prevent Sugarcreek from collecting the property taxes, whether in the form of inside millage or outside millage, to which it is entitled." *Id.* The court of appeals concluded:

> R.C. 709.023(H) and 5709.40 should be read in pari materia to permit a municipal corporation to adopt a TIF ordinance affecting real property located within the municipality pursuant to R.C. 5709.40, except to the extent that the real property "remains subject to the real property taxes," R.C. 709.023(H), of a township in which the real property likewise remains located following a type-2 annexation.

*Id.* at ¶ 28.

{¶ 16} The City appealed, and we accepted for review its proposition of law, which states, "R.C. 709.023(H) enacted as part of annexation reform does not guarantee a township will be paid all township real property taxes forever, free from temporary exemption provided by Ohio's tax-increment financing laws solely because the 'expedited type-2' 100% owner supported annexation process is followed."

### III. Legal Analysis

{¶ 17} We must decide whether a municipality may adopt a TIF that temporarily exempts from township taxes a portion of the value of an improvement on land within a township that has been annexed using the expedited type-2 annexation method and is subject to a municipal TIF, or whether a municipal TIF may not affect the property taxes received by the township. We

hold that a municipality may adopt a TIF that temporarily exempts improvements to the annexed property from township property taxes as well as municipal taxes.

A. *The TIF Tax Exemption Applies to Townships Subject to Expedited Type-2 Annexation*

{¶ 18} The City argues that the plain language of R.C. 709.023 indicates that both the municipality and township remain subject to the TIF exemption set forth in R.C. 5709.40. It further argues that its interpretation is consistent with the General Assembly's intention to support and promote economic development in Ohio. The Township responds that the court of appeals' interpretation was correct and that because R.C. 709.023(H) specifies that the annexed territory "remains subject to the township's real property taxes," it must be interpreted to mean that no township tax revenues may be exempted under a TIF plan. In addition, the Township argues that policy considerations favor this interpretation.

{¶ 19} "The primary goal of statutory construction is to ascertain and give effect to the legislature's intent in enacting the statute. *Brooks v. Ohio State Univ.* (1996), 111 Ohio App.3d 342, 349, 676 N.E.2d 162." *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, ¶ 9. To determine the legislative intent, we must first look to the plain language of the statute itself. *Id.,* citing *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81, 676 N.E.2d 519 (1997). "We apply a statute as it is written when its meaning is unambiguous and definite. *Portage Cty. Bd. of Commrs. v. Akron,* 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 52, citing *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.* (1996), 74 Ohio St.3d 543, 545, 660 N.E.2d 463." *Id*. If a statute is unambiguous, it "must be applied in a manner consistent with the plain meaning of the statutory language. *State ex rel. Burrows,* 78 Ohio St.3d at 81, 676 N.E.2d 519." *Id.*

{¶ 20} The plain language of R.C. 709.023(H) provides that "territory annexed into a municipal corporation pursuant to this section shall not at any time

be excluded from the township under section 503.07 of the Revised Code and, thus, remains subject to the township's real property taxes." In other words, because the annexed land remains a part of the township, the township retains its ability to collect taxes on the property. We agree with the City that the statute prevents the municipality from changing the Township's borders pursuant to R.C. 503.07 (and thus excluding the annexed land from the township) and clarifies that a township still receives property taxes from the annexed land after an expedited type-2 annexation. In no way does the statute limit the ability of a municipality to enact a TIF.

{¶ 21} The Township argues that interpreting R.C. 709.023(H) to mean that there is no prohibition against the application of TIFs to township land under an expedited type-2 annexation would render R.C. 709.023(H)'s final clause superfluous. It asserts that a township's ability to tax annexed land is implicit in the statute and that a municipality can never divert any taxes from the township.

{¶ 22} We do not agree. The two clauses are not independent sentences. The ability to tax is a result of the fact that the territory remains a part of the township. We accordingly read the final clause of R.C. 709.023(H) to set forth the consequences of retaining the annexed land rather than provide for the township's inviolable right to collect any taxes that may arise from annexed property. Furthermore, because R.C. 5709.40 does not take away a township's right to collect taxes on property subject to an expedited type-2 annexation, the statute does not contradict R.C. 709.023.

{¶ 23} This interpretation is bolstered by R.C. 5709.40(F), which enumerates types of tax levies for which the municipality or township will receive funds despite the TIF that directs service payments toward public infrastructure improvements. Included among those levies not affected by the TIF are those for developmental-disability programs, county hospitals, mental-health services or facilities, and libraries. Although R.C. 5709.40(F)(8) lists taxes levied for the

support of township park districts, there is no listing for township real property taxes to be excepted from the TIF. Because the legislature chose not to provide a TIF exception for township real property taxes, we will defer to the legislature's discretion rather than write one into the statute ourselves.

B. *The TIF Statute Preserves a Township's Ability to Collect Taxes*

{¶ 24} The Township argues that by exempting portions of the increased value of property, a TIF violates the condition of R.C. 709.023(H) that the annexed land "remains subject to the township's real property taxes." The Township asserts that by diverting a portion of the tax on the increased property value, the City interferes with the Township's collection of taxes that it would otherwise be able to obtain. We do not agree that a TIF violates R.C. 709.023(H). Unless the affected boards of education approve a higher percentage, R.C. 5709.40(C)(4) caps the amount of taxes that may be exempted under the TIF at 75 percent. Townships continue to collect their full share of taxes on the unimproved portion of the property. In addition, they may collect their share of the taxes on the unexempted portion of improvements to the property—in one sense, a tax windfall that might not have existed without the TIF. Viewed in this light, the TIF enhances rather than interferes with the Township's ability to collect taxes. The Township also argues that policy considerations show that the City's proposed TIF violates R.C. 709.023(H), resulting in a "terrific windfall" for the City and a "fiscal nightmare" for the Township because the City collects the TIF funds while the Township must provide fire protection and emergency services to the area subject to the TIF. We do not accept this argument.

{¶ 25} The Township has not provided any support on the record that improvements arising from the TIF will result in an increased demand for fire protection and emergency services or that increased demand for these services will place the Township in dire fiscal straits. Furthermore, the Township fails to acknowledge that it will be entitled to collect taxes on 25 percent of the value of

any improvements to the annexed land, which arguably may be used to offset any increased demand in service.

{¶ 26} Given our conclusion that the plain language of R.C. 709.023 and 5709.40 grants a municipality the authority to establish a TIF applied to land subject to an expedited type-2 annexation, the Township's extratextual policy argument is unavailing. The General Assembly limited the TIF so that only 75 percent of the value of the property improvements may be excluded from taxation, unless the municipality receives approval from the affected boards of education to exclude more than 75 percent. This means that the Township may collect taxes on 25 percent of the value of the improvements. Absent any evidence to the contrary, we defer to the statutory scheme created by the General Assembly, by which the Township may apply these additional funds toward costs arising from any increased demand for fire and emergency services in the annexed area.

## IV. Conclusion

{¶ 27} When township land has been annexed using the expedited type-2 process established by R.C. 709.023, the township retains the ability to tax revenues on the annexed land. But while R.C. 709.023(H) ensures that the annexed land "remains subject to the township's real property taxes," the statute does not grant townships the unfettered ability to collect any and all taxes that may arise from the real property or improvements to the real property. The annexing municipality may accordingly adopt a tax-increment financing plan under R.C. 5709.40 that temporarily exempts improvements to the annexed property from city and township property taxes on to support the annexed property's economic development. For these reasons, we reverse the judgment of the Second District Court of Appeals and remand the case to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, CUPP, and MCGEE BROWN, JJ., concur.

_____

Frost, Brown, Todd, L.L.C., Matthew C. Blickensderfer, and Scott D. Phillips, for appellee.

Brahm & Cunningham, L.L.C., Richard C. Brahm, and Catherine A. Cunningham; and Altick & Corwin Co., L.P.A., and Scott A. Liberman, for appellant.

Matthew J. DeTemple, urging affirmance for amici curiae Ohio Township Association, Coalition of Large Ohio Urban Townships, Ross Township, Weathersfield Township, Springfield Township, West Chester Township, Violet Township, Boardman Township, Miami Township, Hamilton Township, Howland Township, Pleasant Township, Royalton Township, Colerain Township, Moulton Township, Granger Township, Deerfield Township, Concord Township, Plain Township, Orange Township, Washington Township, Beavercreek Township, and Liberty Township.

Leslie S. Landen, urging reversal for amicus curiae city of Middletown.

Porter, Wright, Morris & Arthur, L.L.P., Robert A. Meyer Jr., Mark A. Snider, and L. Bradfield Hughes, urging reversal for amici curiae Ohio Home Builders Association, Building Industry Association of Central Ohio, Ohio Association of Realtors, and Central Ohio NAIOP.

Darren Shulman, Delaware City Attorney, urging reversal for amicus curiae city of Delaware.

Wiles, Boyle, Burkholder & Bringardner Co., L.P.A., Eugene L. Hollins, and Dale D. Cook, urging reversal for amici curiae Ohio Municipal League and

cities of Troy, Kent, New Albany, Zanesville, Westerville, Hilliard, Miamisburg, and Dayton.

_____