Kennedy, J., concurring in part and dissenting in part.
*412 {¶ 34} "[I]t is the policy of the state of Ohio to encourage annexation by municipalities of adjacent territory." Middletown v. McGee , 39 Ohio St.3d 284, 285, 530 N.E.2d 902 (1988). One of the legislative intentions in enacting annexation statutes was " 'to give an owner of property freedom of choice as to the governmental subdivision in which he desires his property to be located.' " Id. at 286, 530 N.E.2d 902, quoting Toledo Trust Co. v. Bd. of Commrs. , 62 Ohio App.2d 121, 124, 404 N.E.2d 764 (6th Dist.1977).
{¶ 35} In Ohio, the traditional method of annexation requires a number of steps before annexation is complete. See R.C. 709.02 to 709.11. However, in 2001, the General Assembly enacted three expedited methods for annexation. R.C. 709.022 to 709.024. See Sugarcreek Twp. v. Centerville , 133 Ohio St.3d 467, 2012-Ohio-4649, 979 N.E.2d 261, ¶ 4.
{¶ 36} In this case, appellant, National Lime and Stone ("National Lime"), filed a petition for an expedited type-two annexation. See R.C. 709.023. Pursuant to this procedure, appellee, the Marion County Board of Commissioners, was required to grant the annexation when the statutory requirements for filing the *402 petition were met and all the owners of property subject to annexation approved the annexation. R.C. 709.023(F).
{¶ 37} Norfolk Southern Railway ("Norfolk") is the fee-simple owner of two parcels of land in the territory proposed for annexation that are at the center of this dispute. One parcel, conveyed by deed in 1892, is a 4.35-acre strip of land just 60 feet wide, over which one of Norfolk's predecessor railroad companies had an existing track ("first parcel"). The other parcel, conveyed by deed four years later in 1896, is a 75-foot-wide, 1.075-acre strip of land ("second parcel") adjacent to the first parcel, upon which a length of spur of track necessary to accommodate the business of the railroad, stock pens, a scale, and a temporary shelter for passengers and freight, and later a permanent station building, if warranted, were to be constructed. In setting out the boundary lines for the second parcel, the second deed refers to the boundary line of the first parcel as the "right-of-way line."
{¶ 38} I agree with the majority that Norfolk's first parcel falls within the meaning of "railroad right-of-way" in R.C. 709.02(E). However, the majority states that its interpretation of the phrase "railroad right-of-way held in fee" in R.C. 709.02(E)"leaves open the possibility that a railroad's consent may still be a condition for annexation if it owns real property in a territory proposed for annexation that is used for purposes other than as a right-of-way." Majority opinion at ¶ 24. The second parcel falls into this category because it is not used for a right-of-way. Therefore, I concur in part and dissent in part, and I would affirm the judgment of the court of appeals dismissing the complaint for a writ of mandamus.
{¶ 39} Principles of statutory construction guide the resolution of whether Norfolk holds the second parcel of land as a "right-of-way." The statute at issue, R.C. 709.02(E), defines "owner" as one seized of a freehold estate in land, but exempts from those estates any "easements and any railroad, utility, street, and highway rights-of-way held in fee, by easement, or by dedication and acceptance."
{¶ 40} The majority properly relies on Webster's Third New International Dictionary (2002), which recognizes that in the *413 context of railroads, a "right-of-way" can be "the land occupied by a railroad for its tracks." Id. at 1956. The majority further notes that the term "right-of-way" is defined in the CSX Corporation's Railroad Dictionary , https://www.csx.com/index.cfm/about-us/company-overview/railroad-dictionary/?i=R (accessed Oct. 26, 2017) (a "right-of-way" is "[i]n the strictest sense, land or water rights necessary for the roadbed and its accessories").
{¶ 41} The deed to the second parcel provides:
*403 The Columbus, Sandusky & Hocking Railroad Company, hereby agree [sic] to construct on said real estate herein conveyed, a spur track of sufficient length to accommodate the business of the Railroad Company at that point, also to construct stock pens and scale and further agree [sic] to provide a temporary shelter for passengers and freight until the business of said Railroad Company warrants the same, then said Railroad Company shall erect a permanent station building.
Because the second parcel was purchased by the railroad to build stock pens, a scale, a shelter for passengers and freight, and a permanent station building, if warranted, it is not a "right-of-way."
{¶ 42} The majority seemingly fits the second parcel into CSX's definition by finding it to be an "accessory." Majority opinion at ¶ 24. The majority's conclusion is erroneous. In CSX's definition of "right-of-way," "its" is a possessive pronoun; it is used in place of the noun "roadbed" and indicates the roadbed's possession of accessories. Consequently, only those items that are the roadbed's accessories are included within the definition of "right-of-way."
{¶ 43} "Roadbed," as used in the railroad industry, is defined as "[t]he foundation on which a track and ballast rest." CSX Corporation, Railroad Dictionary , https://www.csx.com/index.cfm/about-us/company-overview/railroad-dictionary/?i=R (accessed Oct. 26, 2017). This definition indicates that the foundation is the roadbed and the track and ballast are the roadbed's accessories-the objects or devices that augment the usefulness of the foundation; it does not include stock pens, a scale, a shelter for passengers and freight, and a permanent station building as accessories. To conclude that these items are the roadbed's accessories defies the rules of grammar and ignores technical definitions. See R.C. 1.42.
Legislation has an aim; it seeks to obviate some mischief, to supply an inadequacy, to effect a change of policy, to formulate a plan of government. That aim, that policy is not drawn, like nitrogen, out of the air; it is evinced in the language of the statute, as read in the light of other external manifestations of purpose. That is what the judge must seek and effectuate * * *. [T]he purpose which a court must effectuate is not that which [the legislature] should have enacted, or would have. It is that which it did enact * * * because it may fairly be said to be imbedded in the statute, even if a specific manifestation was not thought of, as is often the very reason for casting a statute in very general terms.
*404 Frankfurter, Some Reflections on the Reading of Statutes , 47 Colum.L.Rev. 527, 538-539 (1947).
*414 {¶ 44} Frankfurter's words are at the very core of the role of the judiciary. In designing the annexation process in R.C. 709.023, the legislature intended for all affected property owners to have a voice in the annexation of their property into a municipality. See R.C. 709.023(E) (all owners of real estate in the territory proposed for annexation must sign the petition). Implementing the General Assembly's intention is imperative because annexation will result in the owner and the property being subject to a municipal form of government and the possibility of new regulatory controls and burdens as well as taxes. With its expansive application of the phrase "railroad right-of-way held in fee," the majority deprives Norfolk of its freedom to choose in which governmental subdivision its property is to be located, and it fails to give effect to the intention of the legislature.
{¶ 45} While "[m]ost of us tend to be swayed by what we read[, j]udges are not superhuman. They, too, are mortals. This is why they have to be exceptionally careful in rendering decisions, which cause unintended consequences." Kapil Sibal, Circumspection, My Lords , The Indian Express (Apr. 21, 2017), http://indianexpress.com/article/opinion/columns/circumspection-my-lords-article-142-use-judicial-diktats-4621562/. Therefore, forefront in our minds should be the unintended consequences that will result from the majority's decision to apply the term "railroad right-of-way" so expansively.
{¶ 46} While I can appreciate the advantages that being annexed into the city of Marion might bring National Lime, that annexation cannot occur in violation of the General Assembly's mandates and to the detriment of Norfolk's freedom of choice regarding its own fee-simple estate. The real property conveyed by the deed for the second parcel is not a "railroad right-of-way held in fee." Upon that parcel, according to the deed, was to be built stock pens, a scale, a shelter for passengers and freight, and a permanent station building. Because the second parcel does not fall within the exceptions to a freehold estate set forth in the definition of "owner" in R.C. 709.02(E), Norfolk's consent to the annexation petition was required. See R.C. 709.02(A). Since National Lime did not have all owners of real estate in the territory proposed for annexation sign the petition for annexation, as required by R.C. 709.023(E)(1) and (2), it has not established a clear legal right to compel the Marion County Board of Commissioners to approve a petition for annexation. Therefore, I concur in part and dissent in part, and I would affirm the judgment of the court of appeals dismissing the complaint for a writ of mandamus.
DeWine, J., concurs in the foregoing opinion.