[Cite as *Niedziewcki v. Swancreek Water Dist.*, 2018-Ohio-2865.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY


John Niedziewcki, et al.                       Court of Appeals No.  F-17-004

      Appellees                               Trial Court No.  15CV000237

v.

Swancreek Water District                       **DECISION AND JUDGMENT**

      Appellant                               Decided:  July 20, 2018

* * * * *

Daniel P. McQuade, for appellees.

Maria Mariano Guthrie and Bobbie Corley O'Keefe, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal from the judgment of the Fulton County Court of Common

Pleas, which granted summary judgment in favor of appellees, John Niedzwiecki and 113

other property owners, on their administrative appeal from appellant's, Swancreek Water

District, determinations that it was necessary to construct a city water extension project and to assess the property owners for the planning expenses of the project. For the reasons that follow, we reverse.

## I.  Facts and Procedural Background

{¶ 2} The Swancreek Water District ("District") is a political subdivision formed in 1997 under R.C. Chapter 6119 to provide water services to the residents of Swancreek Township. The District is governed by a five-person Board of Trustees ("Board").

{¶ 3} In January 2011, the Board was first presented with information that the residents of the Peaceful Valley Association would eventually need water. No action was taken at that time. Separately, in August 2011, a resident, Shawn Shinaberry, requested to have the water main extended down County Road EF. At the time, the water main stopped on County Road EF between County Roads 2 and 3, and Shinaberry would have liked to have it extended to his property on County Road EF between County Roads 3 and 4. Shinaberry requested a survey so that he could gauge community interest, but he did not make progress getting responses and the issue was not pursued.

{¶ 4} In the fall of 2012, the Board heard from another resident of County Road EF between County Roads 3 and 4 that was interested in getting water to his property. By December 2012, Shinaberry presented the petition that he was working on, that indicated 16 residents were in favor of having the water main extended, three were against, and four were undecided. No action was taken at that time.

2.

{¶ 5} In January 2014, the Board began discussing a new project that would tie up loose ends on County Roads E and EF, and that would loop two water systems. On February 26, 2014, the Board adopted Resolution 2014-13, which anticipated a waterline project for County Road EF and Peaceful Valley ("Project"). The Board worked to define the project area throughout the spring of 2014, and on April 23, 2014, adopted Resolution 2014-21, which authorized the engineering firm Arcadis to prepare plans, specifications, profiles, and estimates of cost for the Project. On May 16, 2014, a special meeting was held at which the Board advanced $50,000 from the general operating fund to pay for the preliminary designs from Arcadis. On August 27, 2014, the preliminary designs were presented to the board. The proposed design would cost approximately $3,566,000.

{¶ 6} Special meetings were held on November 18, 19, and 20, 2014, to present the Project to the residents within the project area. At the meetings, the Board provided a Frequently Asked Questions form that explained the details of the Project. $1,000,000 of the Project was to be funded by the District through rate increases, fees, and other charges, which represented the cost of the portion of the Project that would benefit all of the residents within the District by virtue of looping the two systems together. The remaining amount was to be financed at a one percent interest rate through the Ohio Water Development Authority, and the cost would be divided evenly amongst the 213

3.

affected parcels, for an estimated assessment of $11,831. That amount would be payable up to 30 years, resulting in a semi-annual property tax assessment of $229.

{¶ 7} Also included in the Frequently Asked Questions form was a description of why the District was considering the Project:

There is a need for the water throughout the project and a need to tie in stub/dead end water lines and loop the system to maintain the integrity of the water system. Looping the system provides greater service reliability, better water quality and, when system repairs are necessary, it typically results in fewer service disruptions.

The Frequently Asked Questions form also contained the typical benefits of a potable waterline project:

A. Clean, reliable potable water

B. Increased property value

C. Fire hydrants / fire protection

D. Decreased homeowners insurance premiums

E. Less electricity and usage because no well / pump

F. No well maintenance needs.

{¶ 8} At the meetings, several of the residents expressed opposition to the Project. Some of those opposed raised concerns regarding the quality of the Toledo water that would be provided. Sharon Niedzwiecki stated that she owned three parcels in the area

4.

and could not afford to pay for three assessments. Others agreed that they also could not afford the Project. Residents from Scenic Circle stated that they have a pond and do not need the water. On the other hand, a couple of residents at the meetings indicated that they were in favor of the Project.

{¶ 9} Following the special meetings, some residents continued to express their concerns at the regular Board meetings. In January 2015, the Board decided to send out a survey to the owners of parcels in the project area to determine their support for the Project. The results of this survey were 39 in favor, 105 against, and 72 that did not respond. A second survey was sent out to those who did not respond, with the updated results being 49 in favor, 123 against, 5 that had questions, and 40 that did not respond.

{¶ 10} On March 19, 2015, the Board held a special meeting to go over the survey results. It was noted that while the majority were against the Project, there still existed a need or want in the areas. The Board also discussed the benefits of looping the system.

{¶ 11} Thereafter, the Board continued to hold regular meetings at which residents expressed support or opposition to the Project. During this time, an ethical issue arose regarding whether two of the trustees could vote on the Project because they owned property in the project area. A subsequent opinion from the Ohio Ethics Commission clarified that because the trustees would share in the costs and benefits of the large-scale public works project in the same manner as all of the other residents, they were entitled to vote on the Project.

5.

{¶ 12} On July 9, 2015, the Board enacted Resolution 2015-24 to publish a "Notice of Pendency" of the passage of a resolution of necessity to obtain planning funds for the Project. The notice stated, in part:

> Notice of the pendency of the passage of a resolution of necessity to plan and construct a water resource project and to levy an assessment for planning of a water resource project and to maintain and operate the same on behalf of the Swancreek Water District, and of the proposed determination of the necessity of the construction of such project hereafter described.

A public meeting for the purposes of hearing objections to, and endorsements of, the Project was scheduled for July 29, 2015.

{¶ 13} At the July 29, 2015 meeting, everyone was given three minutes to speak. Some residents were in favor of the Project, citing the need for reliable water service, and problems, or potential problems, with wells. Most residents, however, were against the Project. Those opposed frequently referenced that they did not need the water, and that the cost was overly burdensome. In addition, many raised concerns with the quality of the water from Toledo. The residents suggested that there were other ways for those without water to obtain it, such as having a pond, or building a cistern or reservoir and hauling in water.

6.

{¶ 14} At the next regular meeting, on August 13, 2015, the Board enacted, by a 4-1 vote, Resolution 2015-29 to declare the necessity to construct the Project.[1] The resolution stated, in relevant part:

WHEREAS, residents of the area have requested central water services; and

WHEREAS, residents located within the Road 3 & Peaceful Valley Project area have requested that the District construct a waterline improvements project to service them; and

WHEREAS, the District must obtain funds to prepare plans, specifications, estimates of cost, tentative assessments, and a plan of financing for the Road 3 & Peaceful Valley Project to serve the District;

NOW, THEREFORE, BE IT RESOLVED by the Board of Trustees of the Swancreek Water District:

* * *

Section Two:  That the Board of Trustees of the District conducted a hearing on the 29th day of July, 2015, and all persons whose properties are proposed to be assessed were able to provide testimony and any other

---

[1] Immediately after the vote, it became clear that one of the trustees did not understand what his vote entailed.  The Board noted that it could not amend its vote, but it could vote to rescind the resolution.  A motion to rescind the resolution was defeated by a 3-2 vote.

7.

evidence in support of or against said project and the passage of said Resolution; and

Section Three: That having heard such testimony and reviewed such evidence, the Board hereby finds and declares it necessary for the preservation and promotion of the public health, safety and welfare to construct the Road 3 & Peaceful Valley Project and to maintain and operate the same on behalf of the District.

{¶ 15} The Project was again discussed at the regular meeting held on August 27, 2015. The minutes from that meeting reflect Trustee Brunner's explanation of his purpose for wanting to go through with the Project: "[T]here was not one reason for doing this project there are a multitude of reasons and all of them together make it work. * * * There are a lot of benefits to looping; there are health concerns, etc. I am looking down the line in the future, not at the right now. The cost is just going to go up the more we wait."

{¶ 16} On September 10, 2015, the Board passed, by a 3-2 vote, Resolution 2015-35 to publish the "Notice of Pendency" of the passage of a resolution of assessment to plan the Project. The notice stated, in part:

Notice of the pendency of the passage of a resolution of assessment to plan and construct a water resource project and to levy a planning assessment for planning of a water resource project and to maintain and

8.

operate the same on behalf of the Swancreek Water District, and of the proposed determination of the necessity of the construction of such project hereafter described.

{¶ 17} A special meeting regarding the assessment of the planning costs was held on October 1, 2015. Once again, everyone present at the meeting was given three minutes to speak. The vast majority of the people at the meeting were opposed to the project, citing concerns over the cost, lack of need, and the quality of the Toledo water being provided.

{¶ 18} At the next regular meeting, on October 8, 2015, the Board, by a 3-2 vote, enacted Resolution 2015-38 for an assessment under R.C. 6119.58 for the planning of the Project. The resolution referenced that the Board had previously adopted Resolution 2015-29 declaring the necessity of the Project, and further resolved:

1) That the estimated planning cost of the project has been ascertained and all planning assessments have been adjusted accordingly, as required by R.C. 6119.58, as set forth in Exhibit A which is attached hereto and incorporated herein; and

2) That the Board of Trustees of the Swancreek Water District hereby deems it necessary and advisable to assess, at a rate of Eight Hundred Twenty Seven dollars and Ninety Eight cents ($827.98) per parcel identified on Exhibit A in accordance with R.C. 6119.58

9.

{¶ 19} In voicing his opposition to the Project and Resolution 2015-38, Trustee Lange stated that it was not right for current water customers to pay for the new project, and that looping the system to prevent the need to flush the lines was not cost effective. Trustee Fuzinski also opposed the resolution because the Project was too costly. Trustee Brunner, on the other hand, stated that one could not put a value on not shutting down a town if there was an issue because looping was not done. During the public forum, Trustee Brunner addressed the question of why the project should proceed even though the majority of residents do not want or need the water. Brunner explained that the Board has to look at the township as a whole, and that planning for the future and the township's infrastructure is a job the Board has to consider.

{¶ 20} On November 6, 2015, appellees filed their administrative appeal in the trial court, in which they also sought an injunction to prevent appellant from levying assessments against appellees' property, and an injunction to prevent appellant from purchasing Toledo water. Appellees alleged that Resolutions 2015-29 and 2015-38 were unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. In particular, appellees alleged, inter alia, that the resolutions and legal notices of the hearings did not comply with R.C. 6119.58, that the assessments included costs for planning services expended before the resolution of assessment, that the Board has not determined that the Project is

10.

consistent with Environmental Protection Agency standards, and that the Project is not conducive to the public health, safety, convenience, or welfare.

{¶ 21} On December 22, 2015, the District moved for summary judgment. The District argued that the notices and resolutions fully complied with the requirements of R.C. 6119.58. Further, the District argued that its finding of necessity was supported by the transcript of the proceedings before the Board, which demonstrated that the Board engaged in detailed discussions and analysis for several years before passing the resolution of necessity.

{¶ 22} The next day, on December 23, 2015, appellees moved for an extension of time to respond to the District's motion for summary judgment. Concurrently, appellees filed a motion for consideration of additional evidence under R.C. 2506.03. Appellees argued that the transcript of the underlying proceedings provided by the District was insufficient in that appellant "failed to file with the transcript conclusions of fact supporting the final order, adjudication, or decision." R.C. 2506.03(A)(5). In particular, appellees argued that there were no statements of facts supporting the Board's decision that the Project was necessary for the preservation and promotion of the public health, safety and welfare.

{¶ 23} The District opposed appellees' motion to consider additional evidence. The District argued that the resolution of necessity contained the required findings of fact, namely that the Board resolved: "That having heard such testimony and reviewed

11.

such evidence, this Board hereby finds and declares it necessary for the preservation and promotion of the public health, safety and welfare to construct the Road 3 & Peaceful Valley Project and to maintain and operate the same on behalf of the District." The District further argued that even if the findings in the resolution of necessity were insufficient under R.C. 2506.03(A)(5), the remainder of the transcript is sufficient to identify the factual basis for the Board's decision.

{¶ 24} On February 2, 2016, appellees filed their merit brief in the administrative appeal. As the first of five assignments of error, appellees argued that the resolution of necessity was illegal because it did not comply with the requirement in R.C. 6119.011(G) that the resolution include a finding that the project was consistent with the comprehensive plan of water management and the standards set by the environmental protection agency.

{¶ 25} On February 9, 2016, the District filed a combined reply in support of its motion for summary judgment and opposition to appellees' merit brief. In its brief, the District argued that the transcript is complete, and that no additional evidence should be heard pursuant to R.C. 2506.03. Further, in response to appellees' first assignment of error, the District argued that the requirements under R.C. 6119.011(G) apply only to resolutions "providing for acquiring, operating, leasing, or constructing" a water management project. The District asserted that the resolutions of necessity and assessment were for planning purposes only, thus any application of R.C. 6119.011(G)

12.

was premature. It argued that until plans for the Project were completed, it would be impossible to make a determination that the Project was consistent with a comprehensive plan of water management or environmental protection agency standards.

{¶ 26} On February 11, 2016, the trial court held a hearing on the various motions and filings, including appellees' motion filed the day before for a continuance pursuant to Civ.R. 56(F) to conduct discovery. Appellees' discovery request included three resolutions that were not included with the transcript. Those resolutions pertained to the creating of a new fund for the Project, advancing $50,000 from the general fund to the newly created fund for the Project, and approving the agreement with Arcadis for preliminary design of the Project. In addition, appellees also sought a copy of the agreement with Arcadis, and documents showing any and all expenses, payments, or disbursements relating to the Project. Appellees asserted at the hearing that those documents were needed to demonstrate that the Board expended money prior to passing the resolution of necessity, and that any money expended prior to the resolution of necessity rendered the resolutions of necessity and assessment illegal. At the conclusion of the hearing, the trial court gave the parties 10 days to file briefs regarding whether the transcript should be supplemented with those documents.

{¶ 27} In the District's supplemental brief, the District again argued that no exception existed under R.C. 2506.03, and thus the record must be confined to the transcript. Further, the District argued that none of the documents requested by appellees

13.

were relevant or necessary to determine the issues presented in the District's motion for summary judgment or appellees' merit brief in the administrative appeal.

{¶ 28} In appellees' supplemental brief, appellees again argued that the transcript should be supplemented under R.C. 2506.03(A)(5) because there were no conclusions of fact. Appellees also argued, for the first time, that the transcript should be supplemented under R.C. 2506.03(A)(2) because they were not permitted to cross-examine witnesses at the public hearings. In addition, and separate from their position under R.C. 2506.03, appellees argued that there exist genuine issues of material fact, which therefore entitled them to conduct discovery pursuant to Civ.R. 56(F). Those issues of fact included whether the Project was "necessary" and economically feasible, whether the public notice regarding the resolution of assessment was statutorily compliant, whether the resolution of assessment included costs for preliminary designs that were incurred before the passage of the resolution of necessity, and whether the District failed to make any revisions to the estimated assessments that are "necessary or just." Finally, appellees argued that because they were challenging the constitutionality of R.C. 6119.58 and the District's water main extension policy in Resolution 2014-54, they were entitled to offer additional evidence to support their claims.

{¶ 29} The District was granted leave to file a response to appellees' supplemental brief regarding their motion to consider additional evidence. In its response, the District initially noted that appellees' supplemental brief exceeded the scope of the court's order

14.

and raised new arguments for the first time. Thus, the District argued that appellees' supplemental brief should be stricken. Nonetheless, the District addressed the merits of appellees' arguments. In response to appellees' claim that the transcript should be supplemented under R.C. 2506.03(A)(2) because appellees were unable to cross-examine witnesses, the District contended that appellees did not object to the format of the public hearing, and therefore waived that argument in the administrative appeal. Next, the District argued again that the transcript should not be supplemented under R.C. 2506.03(A)(5) because it contained sufficient conclusions of fact.

{¶ 30} On June 1, 2016, the trial court granted appellees' motion to consider additional evidence. The trial court first found that appellees had waived their right to cross-examine the witnesses by not objecting at the hearing, and thus appellees were not entitled to supplement the record under R.C. 2506.03(A)(2). However, the trial court did find that under R.C. 2506.03(A)(5), the District had failed to file conclusions of fact supporting the resolutions. In particular, the trial court found that the resolution of necessity did not contain sufficient findings of fact wherein the Board resolved:

> Section Two: That the Board of Trustees of the District conducted a hearing on the 29th day of July, 2015, and all persons whose properties are proposed to be assessed were able to provide testimony and any other evidence in support of or against said project and the passage of said Resolution; and

Section Three: That having heard such testimony and reviewed such evidence, the Board hereby finds and declares it necessary for the preservation and promotion of the public health, safety and welfare to construct the Road 3 & Peaceful Valley Project and to maintain and operate the same on behalf of the District.

In addition, the trial court found that the remainder of the transcript likewise did not contain sufficient conclusions of fact regarding the resolution of necessity. The court noted that the only factual statements from the trustees pertaining to the necessity of the Project were from the two trustees who stated that they were opposed to the Project because of the cost. As to conclusions of fact relative to the resolution of assessment, the trial court found that the resolution of assessment did not contain any findings of fact, and did not incorporate the findings of fact from the resolution of necessity. Therefore, the trial court held that appellees were entitled to supplement the record with any additional relevant evidence. Finally, in light of its finding under R.C. 2506.03(A)(5), the trial court denied appellees' arguments under Civ.R. 56(F) as moot.

{¶ 31} Thereafter, the parties conducted discovery, including taking the depositions of nine of the property owners and two members of the Board. In addition, appellees submitted affidavits from Trustee Fuzinski and Laura Johnson. Johnson is the Director of the National Center for Water Quality Research at Heidelberg University. In her affidavit, Johnson concluded that the majority of groundwater wells in the project

16.

area contained water that was safe and drinkable, and the water quantity was adequate for residential use in 85 percent of the wells.

{¶ 32} Following discovery, appellees filed their motion for summary judgment, and the District filed a supplement to its original motion for summary judgment. In appellees' motion they presented six arguments in support. First, they argued that the resolutions were illegal under the District's waterline extension policy because the Board initiated the Project without the required public majority support. Second, they argued that the resolutions were illegal because they did not include a finding that the Project is consistent with the water management plan and with the standards set by the environmental protection agency, as required under R.C. 6119.011(G). Alternatively, appellees argued that the resolutions were illegal because the District expended funds to plan the project before passing the resolution of necessity. Third, appellees argued that the resolution of assessment was illegal because the notice of hearing was deficient under R.C. 6119.58. Fourth, they argued that the resolutions of necessity and assessment were arbitrary and capricious because the Board did not consider public records regarding existing water quality and quantity, and did not consider the residents' statements that there was not a need for city water. Fifth, appellees argued that the resolutions were unsupported by the preponderance of substantial, reliable, and probative evidence. Finally, appellees argued that the resolutions were unconstitutional because they violated

17.

appellees' due process rights in that the District committed multiple violations of statutorily mandated procedures.

{¶ 33} In the District's supplemental motion for summary judgment, it argued that the resolutions complied with all of the requirements under R.C. Chapter 6119. Further, the District argued that the resolution of necessity was supported by five factors:

(1) the initial Shinaberry petition showing a need for the water by some property owners, and the subsequent surveys which showed a continued interest by a significant number of property owners even though the majority were against the project;

(2) the preliminary engineering reports from Arcadis showing that potential looping of the lines to limit "dead ends" and to reduce flushing of the lines would be the most efficient method of proceeding and would provide a better quality of water, as well as providing an additional water line to service existing customers in Metamora in case of emergencies;

(3) the potential cost savings of including the most amount of properties on the shortest amount of pipe;

(4) the intent to prevent potential problems that might develop in the Peaceful Valley area as a result of the septic and water areas for a number of parcels in that area not meeting minimum state requirements for spacing of 100 ft.; and

18.

(5) getting the project "shovel ready" so the Water District could be in a position to apply for state and federal grants to help reduce the costs. Thus, the District concluded that no genuine issues of material fact existed, and summary judgment in its favor was appropriate.

{¶ 34} The parties then each filed responses and replies to the motions for summary judgment.

{¶ 35} On January 17, 2017, the trial court granted summary judgment in favor of appellees, and vacated the resolutions of necessity and assessment. In its decision, the trial court found that the resolution of necessity was illegal because it failed to comply with the requirement in R.C. 6119.011(G) that the Board find that the project is consistent with the applicable comprehensive plan of water management, and that it is consistent with environmental protection agency standards. By extension, the trial court thereby also found the resolution of assessment to be illegal. In addition, the trial court found that the preponderance of the substantial, reliable, and probative evidence did not support the District's finding that the Project was "necessary." The trial court declined to address the remainder of appellees' arguments. Finally, in light of its order vacating the resolutions of necessity and assessment, the trial court dismissed appellees' claims for injunctive relief.

19.

## II. Assignments of Error

**{¶ 36}** The District has timely appealed the trial court's June 1, 2016, and January 17, 2017 judgments, assigning four errors for our review:

> **I.** The trial court erred in considering new or additional evidence under R.C. 2506.03.

> **II.** The trial court erred in permitting Appellees to conduct additional discovery and present additional evidence and failed to hold an evidentiary hearing.

> **III.** The trial court erred in granting Appellees' Motion for Summary Judgment and denying Appellant's Motion for Summary Judgment.

> **IV.** The trial court erred in concluding that the finding that the Resolutions passed by Appellant were illegal.

For ease of discussion, we will address the District's assignments of error out of order.

## III. Analysis

**{¶ 37}** Review of administrative appeals is governed by R.C. 2506.04, which provides:

> If an appeal is taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported

by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court.

{¶ 38} The Ohio Supreme Court has further explained how appellate review of an administrative decision by a common pleas court differs from that by a court of appeals:

The common pleas court considers the "whole record," including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.

The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is "*more limited* in scope." * * * "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." * * * "It is incumbent on the trial court to examine the evidence. Such is not the

charge of the appellate court. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so."

* * *

This court has held that in administrative appeals under R.C. 2506.04, "within the ambit of 'questions of law' for appellate court review would be abuse of discretion by the common pleas court." (Internal citations omitted.) *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147-148, 735 N.E.2d 433 (2000).

### A. Whether findings are required under R.C. 6119.011(G)

{¶ 39} In its third assignment of error, the District argues that the trial court erred when it found that the resolutions of necessity and assessment were illegal because they failed to contain a finding that the Project was consistent with standards established by the environmental protection agency as required under R.C. 6119.011(G).

{¶ 40} R.C. 6119.58 provides the procedure for a water district to obtain funds for the purposes of planning a project. It provides, in pertinent part,

In order to obtain funds for the preparation of plans, specifications, estimates of cost, tentative assessments, and a plan of financing for any

water resource project or part thereof, the board of trustees of a regional water and sewer district may levy upon the property in such district to be benefited by such project assessments apportioned in accordance with one or more of the methods set forth in section 6119.42 of the Revised Code. * * *

If the board of trustees proposes to obtain funds in accordance with this section, it shall determine by resolution that it is necessary to construct the water resource project and to maintain and operate the same on behalf of the district.

R.C. 6119.011(G) defines "water resource project" as

any waste water facility or water management facility acquired, constructed, or operated by or leased to a regional water and sewer district or to be acquired, constructed, or operated by or leased to a regional water and sewer district under this chapter, or acquired or constructed or to be acquired or constructed by a political subdivision with a portion of the cost thereof being paid from a loan or grant from the district under this chapter, including all buildings and facilities that the district considers necessary for the operation of the project, together with all property, rights, easements, and interest that may be required for the operation of the project. Any water resource project shall be determined by the board of trustees of the

district to be consistent with any applicable comprehensive plan of water management approved by the director of natural resources or in the process of preparation by the director and to be not inconsistent with the standards set for the waters of the state affected thereby by the environmental protection agency.  Any resolution of the board of trustees of the district providing for acquiring, operating, leasing, or constructing such projects or for making a loan or grant for such projects shall include a finding by the board of trustees of the district that those determinations have been made.

{¶ 41} In its decision granting summary judgment to appellees, the trial court found that the resolution of necessity, and by extension the resolution of assessment, failed to include a finding that the Project was consistent with the standards set by the environmental protection agency, and were therefore illegal under R.C. 6119.011(G). We hold that the trial court's interpretation is incorrect as a matter of law.

{¶ 42} "The primary goal of statutory construction is to ascertain and give effect to the legislature's intent in enacting the statute.  To determine legislative intent, we must first look to the plain language of the statute itself.  We apply a statute as it is written when its meaning is unambiguous and definite.  If a statute is unambiguous, it must be applied in a manner consistent with the plain meaning of the statutory language." (Internal citations omitted).  *Sugarcreek Twp. v. City of Centerville*, 133 Ohio St.3d 467, 2012-Ohio-4649, 979 N.E.2d 261, ¶ 19.

{¶ 43} Here, a plain reading of R.C. 6119.011(G) reveals that it requires the findings of consistency in any resolution "providing for acquiring, operating, leasing, or constructing such projects." In this case, the resolution of necessity declared only that it was necessary to construct the project; it did not provide for the actual construction of the project. Therefore, the required findings under R.C. 6119.011(G) do not apply to the resolutions of necessity and assessment at issue here. Furthermore, we agree with the District that this technical distinction makes sense when considering that it would be impossible for a board of trustees to find that a project is consistent with environmental protection agency standards when the final plans for the project have not been prepared.

{¶ 44} Accordingly, the District's third assignment of error is well-taken.

**B. Whether the transcript should have been supplemented under R.C. 2506.03(A)(5)**

{¶ 45} As an alternative basis for granting summary judgment, the trial court found that the Board's decision was not supported by a preponderance of the substantial, reliable, and probative evidence. Before we can reach this issue, however, we must address the threshold matter regarding what evidence the trial court could consider.

{¶ 46} In its first assignment of error, the District argues that the trial court erred when it allowed appellees to provide additional evidence outside of the transcript. Relevant here, R.C. 2506.02 requires that,

> Within forty days after filing a notice of appeal in relation to a final
>
> order, adjudication, or decision covered by division (A) of section 2506.01

25.

of the Revised Code, the officer or body from which the appeal is taken, upon the filing of a praecipe by the appellant, shall prepare and file in the court to which the appeal is taken, a complete transcript of all the original papers, testimony, and evidence offered, heard, and taken into consideration in issuing the final order, adjudication, or decision.

Further, R.C. 2506.03(A)(5) provides that the hearing shall be confined to the transcript unless "[t]he officer or body failed to file with the transcript conclusions of fact supporting the final order, adjudication, or decision."

{¶ 47} Ohio courts have accepted conclusions of fact that "were very summary in nature." *Galli v. City of Columbus*, 193 Ohio App.3d 415, 2011-Ohio-1896, 952 N.E.2d 525, ¶ 16 (10th Dist.). In addition, R.C. 2506.03(A)(5) "does not require the conclusions of fact to take any specific form," *Concerned Richfield Homeowners v. Planning & Zoning Comm.*, 9th Dist. Summit No. 25033, 2010-Ohio-4095, ¶ 10, and Ohio courts have looked to meeting minutes to provide the conclusions of fact. *See, e.g., id.* at ¶ 12; *Premier Dev., Ltd. v. Poland Twp. Bd. of Zoning Appeals*, 7th Dist. Mahoning No. 14 MA 91, 2015-Ohio-2025, ¶ 40; *Ziss Bros. Constr. Co., Inc. v. City of Independence Planning Comm.*, 8th Dist. Cuyahoga No. 90993, 2008-Ohio-6850, ¶ 27; *but see Brookside Auto Parts, Inc. v. City of Cleveland*, 8th Dist. Cuyahoga No. 91721, 2009-Ohio-967, ¶ 27 ("Considering the ordinary meaning of the words in R.C. 2506.03(A)(5), we cannot conclude that conclusions of fact are appropriately contained 'in' the

26.

transcript. The statute explicitly requires separate conclusions of fact, apart from the transcript of the hearing."). The key concern is that parties should be informed of the reasons for the decision, and courts should have something to review. *Shelly Materials v. Daniels*, 2d Dist. Clark No. 2002-CA-13, 2003-Ohio-51, ¶ 23.

{¶ 48} Here, the trial court examined the resolution of necessity, specifically noting:

> Section Two: That the Board of Trustees of the District conducted a hearing on the 29th day of July, 2015, and all persons whose properties are proposed to be assessed were able to provide testimony and any other evidence in support of or against said project and the passage of said Resolution; and

> Section Three: That having heard such testimony and reviewed such evidence, this Board hereby finds and declares it necessary for the preservation and promotion of the public health, safety and welfare to construct the Road 3 & Peaceful Valley Project and to maintain and operate the same on behalf of the District.

{¶ 49} In this case, Section Three of the resolution of necessity contains the penultimate finding required by R.C. 6119.58, namely that it is necessary to construct the Project. Nevertheless, in finding that the transcript did not contain sufficient conclusions

27.

of fact, the trial court reasoned that there were no factual findings to support or explain the conclusory language contained in the resolution.

{¶ 50} However, the trial court failed to consider the earlier language in the resolution of necessity, which stated,

> WHEREAS, residents of the area have requested central water services; and

> WHEREAS, residents located within the Road 3 & Peaceful Valley Project area have requested that the District construct a waterline improvements project to service them; and

> WHEREAS, the District must obtain funds to prepare plans, specifications, estimates of cost, tentative assessments, and a plan of financing for the Road 3 & Peaceful Valley Project to serve the District.

This "whereas" language contains a factual basis for finding that the Project was necessary in that residents have requested water services, and have requested that the Project be constructed. Likewise, the finding in the resolution of assessment that the resolution of necessity had previously been passed, provides the factual basis for passing the resolution of assessment. Furthermore, a review of the entire transcript elucidates the Board's reasoning for proceeding with the Project. The reasoning includes the requests by some residents of the project area, the benefits of looping the two systems together—

28.

i.e., better water quality and more reliable service—and the potential cost savings of doing the Project now as opposed to later.

{¶ 51} Notably, it is a separate question whether the transcript supports the truth and validity of the Board's reasons, or whether those reasons are sufficient to justify a finding of necessity. But for the limited purpose of determining what the Board decided and why it made that decision, we hold that the transcript contains sufficient conclusions of fact as set forth in the resolution and the remaining transcript documents. Therefore, we hold that the trial court erred as a matter of law in allowing appellees to supplement the transcript under R.C. 2506.03(A)(5).

{¶ 52} Accordingly, the District's first assignment of error is well-taken.

### C. Remaining assignments of error moot

{¶ 53} Because we hold that the trial court erred in allowing appellees to supplement the record, the District's second assignment of error, which challenges the trial court's failure to hold a hearing on the supplemented evidence, and the District's fourth assignment of error, which challenges the trial court's decision that was based upon the supplemented evidence, are moot.

{¶ 54} Accordingly, the District's second and fourth assignments of error are not well-taken.

29.

## IV. Conclusion

**{¶ 55}** For the foregoing reasons, we find that substantial justice has not been done the party complaining, and the judgment of the Fulton County Court of Common Pleas is reversed. This matter is remanded to the trial court for consideration of appellees' administrative appeal only upon the transcript provided under R.C. 2506.02, and in accordance with this decision. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

_____
JUDGE

James D. Jensen, J.
CONCUR.

_____
JUDGE